**STATE v. DAVIS et al.**

No. 14088.

Court of Civil Appeals of Texas.
Fort Worth.

May 3, 1940.

Rehearing Denied June 7, 1940.

Ned McDaniel, of Wichita Falls, for appellant.

W. E. Fitzgerald, of Wichita Falls, for appellees.

SPEER, Justice.

The State of Texas sought to condemn a strip of land 100 feet wide through the 120 acre farm of George T. Davis, situated near Iowa Park, in Wichita County, Texas. The Federal Land Bank of Houston held a lien on the land and was made a party defendant. The controversy involves objections filed by defendants to the award of damages assessed by the Board of Special Commissioners appointed by the county judge, under Article 3265, R.C.S.

862

A jury trial was had on special issues. The verdict was favorable to defendants and the State has appealed.

The form of the special issues submitted is as prescribed by the Supreme Court in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, and no complaint is made of the issues, except as hereinafter indicated.

There are three propositions presented by plaintiff (the State) upon which reversal is requested. The first is, in substance, that the court erred in refusing to permit plaintiff to offer testimony that the construction of a modern concrete highway would enhance the value of the residue of defendants' land in sufficient amount to overcome the losses sustained by them by reason of additional fences and any inconveniences that might follow on account of the location of the road.

The defendants' pleadings show that their lands consist of a farm containing 120 acres in the general shape of an inverted "L"; better described as being all of a 160 acre square block excepting the southwest quarter. The east 80 acres are cultivating lands and the west 40 are in pasture; the improvements are located in the extreme southeast corner; the dwelling house faces east. A graded dirt road leads from the residence east 600 or 700 feet to a graveled road, which extends south about 1000 feet to the old concrete highway. The right-of-way across defendants' farm is 100 feet wide, enters about 450 feet west of the southeast corner, extends in a northwesterly direction, cutting 8.3 acres of cultivating land off from the remainder and passes out over 600 feet north of their most Western southwest corner, leaving 6.3 acres of pasture land south of the road. The new highway is located about 400 feet to the rear of the residence. Defendants claim damages to the residue of their property, by reason of the lessened size of their farm, as a whole, after deducting the appropriated highway and the smaller tracts cut off to its south, also the location of the highway at the rear of the improvements and the inaccessibility and inconvenience caused to the 8.3 acres of cultivating and the 6.9 acres of pasture lands, all contributing to a lessened market value of the property.

Replying to defendants' allegations of damages, more especially to those alleged to the residue, the State plead that the location and construction of the concrete road 32 feet in width would be an advantage to the premises and enhance its value, rather than lessen it.

It is very difficult to present here a fair resume of the testimony and the identical questions complained of by the State for the reason the controversy covers 25 or more pages of the Statement of Facts before us. Also much of the record is consumed by questions and answers which refer to "this" and "that" tract, doubtless shown on a plat in the record. The State offered the witness K. P. Abernathy. He testified that to assume that a highway was built as indicated by the plat, the market values of "this" and "that" land would not be changed, because they have a good road already. If the testimony meant that the land designated was the residue after appropriating the highway, then the State could not complain because it produced the evidence. Another inquiry made by the State of the witness was this:

"Question: * * * Would there be any demand for that piece of land on the market for any purpose other than farming—say for a filling station?" (The Court sustained an objection to the form of the question, and added, "but will permit the proof on the present market value.")

The witness then qualified to testify as to values of lands other than farm lands located along the highway, and being asked the market value of the 8.3 acres (cut off from the farm by the highway), said that his answer would only be an opinion and he would rather not give it. He was then excused.

█ We think no error is shown in the rulings of the court in connection with the evidence tendered. The question asked was sufficient to ascertain if the segregated tract had a market value for some other purpose than farming, such as that of a filling station, resulting from the location of the proposed highway. This, if proven and the course of inquiry pursued, may or may not have shown an increased value which would have been peculiar and special to the defendants, and not such a benefit as was common to the community. It appears, however, that no ruling of the court prevented the introduction of that evidence, and moreover the State's witness hesitated to give his opinion and he was not asked to do so.

Ed McGrath testified at the instance of defendants concerning market values before and after the appropriation of the right-of-way strip. The State's right to cross-examine him relative to matters about which it had attempted to examine the witness Abernathy is embraced in the proposition under discussion. He was asked by the State:

"Question: Considering the fact he's (defendants) got a highway coming in here, good road, solid road into his farm, and all of this is accessible and usable, the value of this piece of land wouldn't be changed, would it?"

Objection was made that the benefits inquired about were common to all persons adjacent to the highway, and sustained by the court in this language:

"Court: I will sustain the objection to the question in the form it is asked. I will let him testify to the value of the land on the north."

Exception was taken to the ruling of the court and a request made that the bill of exception should show that the "witnesses are not allowed to take into consideration the fact that the highway comes in or adjoins or is adjacent to the land, in determining the market value after the highway is put in."

"Court: I will give you the bill on that. At the same time I will give you the right to ask the witness about any peculiar benefit to him by the highway or any peculiar disadvantage to the land by the highway, not common to the general community."

Counsel for the State then asked the witness if the location of the highway was of any particular benefit to the land, and the witness replied that he did not think so.

If we properly understand the contention of the State in this case, it is that as against defendants' claim for damages to the remainder of their land not taken for highway purposes, the condemnor has a right to off-set such damages by evidence that the location of the highway upon and necessarily adjacent to the owner's land on both sides, is an advantage to the owner and thereby enhances the market value of the lands. The Court overruled the contention upon the grounds that if the location of the highway did enhance the value of the remainder, it was common to the community or to those similarly situated and not recoverable in off-set by the condemnor; but that any enhancement of values by reason of special or peculiar benefits to the owner could be considered by the jury in off-set against damages claimed.

We think the trial court properly construed the rule in such cases as this. State's counsel depends largely upon the holding in the case of State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 201. We have carefully studied that opinion and find that it is devoted to a discussion of the nature of damages which can be recovered by a condemnee to the remainder of his lands not appropriated, and to the manner in which the issues should be submitted to the jury. The very definite rule announced in that case is that a condemnee's recovery for damages to the remainder of his land must be based upon the difference in the market value immediately before and immediately after the appropriation. After discussing elements of damages entering into a condemnee's damages, this is said of condemnor's right of off-set: "It is of course settled that enhancement in market value of the residue of the land by reason of 'special benefits' is a legitimate offset to damages thereto, but not to the value of the part actually taken. The statute has not defined 'special benefits.' It has only undertaken to define community benefits and negatively authorizes all other benefits to be taken into account. A finding as to market value would include such benefits, and should do so. It should not include, however, value because of community benefits, and for this reason we have concluded that provision should be made in the charge for excluding such benefits." For the reasons stated, the court in that case proposed a proper issue to be submitted in such cases. It reads: "Excluding increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by defendants in common with the community generally and not peculiar to them and connected with their ownership, use, and enjoyment of the particular tract of land across which the strip of land has been condemned, and taking into consideration the uses to which the strip condemned is to be subjected, what do you find from a preponderance of the evidence was the market value of the remainder of defendants' tract of land immediately after the taking of the strip condemned for highway purposes?" The

trial court in the instant case copied and submitted the above suggested issue.

■ It will be observed that the State's complaint here is that the trial court would not permit it to prove that the location of the highway through and adjacent to defendants' land would prove a certain benefit to them, by which the State hoped to off-set damages claimed to the remainder. The location of the highway certainly was a benefit to the whole community, common to everybody in that vicinity, and more especially to those close to it, as was defendants' land. There is testimony in this record, however, which tends to show that such close proximity is a detriment produced by hazards of heavy traffic. It seems that the question of what are and what are not community benefits, and special or peculiar benefits, has been discussed many times by our courts. We think it can safely be said, as applicable to the case at bar, that the State could off-set damages to the remainder of the land by any provable advantages or enhanced values which were special and peculiar to defendants and not common to the public. The converse of this is likewise true, that such damages could not be off-set by advantages and enhanced values that came to the community because of the road. In the interest of brevity, we cite 16 Tex.Jur., sects. 330, 331 and 332, Eminent Domain. The bill of exception in this case shows conclusively that the court only excluded condemnor's evidence of community benefits, and qualified the bill by saying that plaintiff would be permitted to show, if it could, any peculiar and special benefits to defendants' property. We see no error in the court's ruling, and the proposition is overruled.

The State urges three propositions as against the first Special Issue and its answer. The issue reads: "From a preponderance of the evidence, what do you find was the market value of the strip of land condemned by the State for highway purposes at the time it was condemned, considered as severed land?" The answer was, "$37.50 per acre."

■ It is contended by second and third propositions, which we shall treat as one, that the issue was improper because there was no evidence upon which to base an answer thereto, since none of the evidence was confined to its value as severed land. It is unquestionably true that in arriving at the value of the strip appropriated, it must be determined independently of the value of the remainder which may have a greater or lesser value per acre for obvious reasons; such as a greater or lesser degree of fertility, contour, state of cultivation and improvements. To do otherwise would afford what might be termed a double recovery. The improvements on the whole give an additional value to each acre from what it would be if there were no improvements. The double recovery is complained of in the fourth proposition and all are briefed as presenting one error, adequately assigned, however.

■ We see no such error presented here as to require a reversal of the case. In the first place, no objection was made by the State to the evidence of values of the condemned strip when offered, and no request was made that the testimony be limited to a value as if severed from the remainder. In the next place, the fact that the jury fixed the market value of the strip taken at $37.50 per acre the same as some of the witnesses gave as the value per acre of the whole tract, does not mean that the verdict necessarily reflects a failure to consider the values as severed land, as the issue inquired. The presumption prevails that the jury observed the court's charge unless the contrary appears. The various witnesses estimated the market value of the whole, before the appropriation at from $35, the lowest, to $50, the highest, per acre. The cultivating land was shown to be most valuable. The record shows that 3.01 acres of cultivating and 2.56 acres of pasture land were taken and the jury found that the 5.57 acres in the strip was worth $37.50 per acre. No request was made that the court submit separate issues inquiring as to the value of the two types of land so taken, nor do we think such was necessary; the answer as made does not reflect that the jury did anything other than as requested in the special issue, that is, to determine the value, as if it was severed from the remainder. This being done, no double recovery was had.

There is no error in the judgment entered, and it should be affirmed. It is so ordered.