DEPARTMENT OF TRANSPORTATION Plaintiff v. JOE C. ROWE and wife, SHARON
B. ROWE; HOWARD L. PRUITT, JR., and wife, GEORGIA PRUITT; ROBERT W.
ADAMS, Trustee; ALINE D. BOWMAN; FRANCES BOWMAN BOLLINGER; LOIS
BOWMAN MOOSE; DOROTHY BOWMAN ABERNETHY and husband, KENNETH
H. ABERNETHY; MARTHA BOWMAN CAUDILL and husband, JACK CAUDILL;
APPALACHIAN OUTDOOR ADVERTISING CO., INC. (formerly Appalachian
Poster Advertising Company, Inc.), Lessee; and FLORENCE BOWMAN BOLICK,
Defendants

No. COA97-1470

(Filed 20 June 2000)

**1. Eminent Domain— condemnation for highways—size of taking—no common plan or scheme—no unity of use**

The trial court erred in finding that tracts C and D were part of the area affected by the condemnation proceeding for highway purposes involving tracts A and B because: (1) the tracts were not being held for development under a common plan or scheme, and the best and highest use of tracts C and D remained economic development after the taking; and (2) no unity of use exists since defendants' use and enjoyment of tracts C and D were not related to their use of tracts A and B, nor related to or affected by the area taken.

**2. Eminent Domain— condemnation for highways—just compensation—fair market value of remainder tract—setoff with general benefits—unconstitutional**

Although the "special benefits" rule under N.C.G.S. § 136-112(1) is constitutionally sound, the provision allowing the fair market value of the remainder tract of land to be set off with any "general benefits" resulting from the utilization of the part taken for highway purposes violates the constitutional requirement of providing just compensation in condemnation proceedings because: (1) the general provision charges the property owner with a cost for those benefits that the public also enjoys without being subjected to any similar charge; and (2) the property owner is subjected to an involuntary taking of his property while also being subjected to the injustice of receiving an amount less than what he has actually lost.

**3. Eminent Domain— condemnation for highways—equal protection—general benefits—unconstitutional statute**

Since there is no compelling governmental interest to allow property owners who have part of a tract of land condemned for

DEPARTMENT OF TRANSP. v. ROWE

[138 N.C. App. 329 (2000)]

highway purposes to be denied just compensation received by other property owners also subjected to condemnation proceedings, N.C.G.S. § 136-112(1) violates the equal protection clause because: (1) a property owner will receive just compensation if the taking is imposed under N.C.G.S. § 40A-64, even though the same property owner is not entitled to just compensation if the imposed taking is under N.C.G.S. § 136-112(1) since the condemnor in the latter statute is the Department of Transportation; and (2) a property owner who has a whole tract of land condemned under N.C.G.S. § 136-112(2) receives just compensation, while a property owner who has only a part of a tract condemned for highway purposes does not receive just compensation since subsection 2 of that statute does not require a consideration of the general benefits resulting from the condemnation.

Judge HORTON dissenting in part.

Appeal by defendants from judgment entered by Judge J. Marlene Hyatt on 17 June 1997 in Superior Court, Catawba County and orders entered by Judge James L. Baker, Jr., on 8 May 1997 and 16 May 1997 in Superior Court, Catawba County. Heard in Court of Appeals 27 August 1998. On 20 October 1998, the Court of Appeals issued a unanimous decision, 131 N.C. App. 206, 505 S.E.2d 911 (1998), holding in pertinent part that defendants Rowe and Pruitt did not file a timely appeal of preliminary orders entered by Judge Baker following a hearing under N.C. Gen. Stat. § 136-108, but finding error in the admission of evidence which required a new trial in the case. Under N.C. Gen. Stat. § 7A-31 (1999), the Supreme Court granted discretionary review of this Court's decision on the issue of timeliness of the appeal by defendants Rowe and Pruitt from the interlocutory orders entered on 8 May 1997 and 16 May 1997, and held that "the interlocutory orders entered did not affect a substantial right of defendants and that defendants were not required to immediately appeal the trial court's orders." The case was remanded to this Court for a determination of the issues raised by the appeal from the interlocutory orders.

*Attorney General Michael F. Easley, by Assistant Attorney General J. Bruce McKinney, for plaintiff-appellee.*

*Lewis & Daggett, P.A., by Michael J. Lewis, and Bell, Davis & Pitt, PA, by Stephen M. Russell, for defendants-appellants.*

WYNN, Judge.

On 26 June 1995, the North Carolina Department of Transportation brought a declaration of taking action in Superior Court, Catawba County condemning 11.411 acres of the 18.123 acres of land belonging to Joe C. Rowe and his wife, Sharon B. Rowe, and Howard L. Pruitt, Jr., and his wife, Georgia M. Pruitt. However, because the Department of Transportation concluded that the benefits to the defendants' remaining 6.712 acres of property outweighed any loss to the defendants due to the taking, it did not make a deposit of estimated compensation for the 11.411 acres of taken property.

The defendants answered alleging that the "special or general benefits" provision of the condemnation statute, N.C. Gen. Stat. § 136-112(1) (1999), denied them equal protection in violation of the North Carolina and United States Constitutions. The defendants also challenged the Department of Transportation's claim that all of the defendants' remaining tracts of land should be considered in comparing the benefits of the taking to the defendants' resulting loss.

The trial court conducted a pretrial hearing under N.C. Gen. Stat. § 136-108 to settle issues other than the amount of damages. The evidence showed that after the taking the defendants were left with four small tracts of land identified as tracts A, B, C, and D, totaling 6.712 acres. Before the taking, tract A connected to the easternmost part of the property taken by the Department of Transportation and tract B connected at the westernmost part of the taken property. A 70 foot strip of land owned by the City of Hickory separated tract B from tracts C and D. A 60 foot strip of land owned by the City of Hickory separated tracts C and D from each other. The evidence showed that the City of Hickory intended to construct streets on the 60 and 70 foot strips; but, no streets had been constructed on the strips as of the date of the taking.

The trial court determined that the defendants' four remaining tracts had "physical unity" with the condemned property and were therefore, affected by the taking. The trial court also rejected the defendants' claim that the condemnation statute, N.C.G.S. § 136-112(1), was unconstitutional.

Following the preliminary hearing, the matter of just compensation was tried before a jury in the Superior Court, Catawba County. At trial, the trial court instructed the jury that it could consider any special and general benefits to the defendants' property which was not

taken, including tracts C and D. The jury returned a verdict conclud-
ing that the defendants were not entitled to any compensation for the
involuntary taking of their 11.411 acres because the increased value
of the remaining four tracts offset the loss of the taken property.

From the trial court's judgment consistent with the jury's verdict,
the defendants appeal contending that: (I) the trial court erred in
including tracts C and D in the area affected, thereby treating all
of the defendants' property as a "unified tract" and (II) N.C.G.S.
§ 136-112(1), which allows a deduction from just compensation for
"special or general benefits" resulting from the taking, is unconstitu-
tional on its face and as applied to these defendants.

## I. AREA AFFECTED BY THE TAKING

[1] The defendants first contend that the trial court erred in includ-
ing tracts C and D in the area affected by the condemnation proceed-
ing. In support, they argue that tracts C and D have neither physical
unity nor unity of use with the land taken by the Department of
Transportation.

In most cases, the landowner is the party who seeks to add addi-
tional property to the area affected by a condemnation taking of his
property in an attempt to increase his damages. *See e.g., City of
Winston-Salem v. Yarbrough*, 117 N.C. App. 340, 451 S.E.2d 358
(1994). But in this case, it is the condemning authority—the
Department of Transportation—which seeks to: (1) include tracts C
and D in the area affected by the taking and (2) show that tracts C and
D are benefitted by the taking to the extent that the Department of
Transportation may avoid paying the landowner defendants any com-
pensation whatsoever for the condemned 11.411 acres.

The determination of whether there is a unity of lands in a con-
demnation proceeding must be based on the facts of each case. The
factors which are usually emphasized in such a determination include
"unity of ownership, physical unity and unity of use." *Barnes v. North
Carolina State Highway Comm'n*, 250 N.C. 378, 384, 109 S.E.2d 219,
224-25 (1959). Although unity of use is given great weight, the tracts
claimed as a single tract "must be owned by the same party or par-
ties." *Id.* at 384, 109 S.E.2d at 225.

In this case, the parties stipulated that there was unity of owner-
ship as to all tracts, including tracts C and D. The parties also agreed
that a strip of land owned by the City of Hickory separates tracts C

and D and that another strip of land owned by the City of Hickory separates tracts C and B.

In general, parcels of land must be contiguous to constitute a single tract for the purpose of determining severance damages and benefits. *Id.* "Contiguous" means "[t]ouching at a point or along a boundary." Black's Law Dictionary, p. 315 (7th Ed. 1999). "But in exceptional cases, where there is an indivisible unity of use, owners have been permitted to include parcels in condemnation proceedings that are physically separate and to treat them as a unit." *Barnes*, 250 N.C. at 385, 109 S.E.2d at 225.

> It is generally held that parcels of land separated by an established city street, in use by the public, are separate and independent as a matter of law. "When land is unoccupied and so not devoted to use of any character, and especially when it is held for purposes of sale in building lots, a physical division by wrought roads and streets creates independent parcels as a matter of law . . . (but) If the whole estate is practically one, the intervention of a public highway legally laid out but not visible on the surface of the ground is not conclusive that the estate is separated." Nichols on Eminent Domain (3rd Edition), sec. 14.31(1), Vol. 4, pp. 437-8. Lots separated by a public alley but in a common enclosure have been held to be a single property. Mere paper division, lot or property lines, and undeveloped streets and alleys are not sufficient alone to destroy the unity of land. "If the owner's land is merely crossed by the easement of another, the fee remaining in him, and the sections so made are not actually devoted, as so divided, to wholly different uses, they are to be considered actually contiguous and so as a single parcel or tract." 6 A.L.R.2d 1200, sec. 2.

*Id.*

In this case, the defendants did not retain any interest in the strips of land deeded to the City of Hickory for streets, thereby tending to support a finding that there was no physical unity between tracts C and D and the tracts identified as A and B. Even assuming there was physical unity between the aforementioned tracts, lands will not normally be considered to constitute a single tract for the purpose of determining severance damages and benefits unless there is unity of use.

In *Barnes*, our Supreme Court set out the common law test for unity of use, holding that:

"there must be such a connection or relation of adaptation, convenience, and actual and permanent use, as to make the enjoyment of the parcel taken reasonably and substantially necessary to the enjoyment of the parcel left, in the most advantageous and profitable manner in the business for which it is used." The unifying use must be a *present* use. A mere intended use cannot be given effect.

*Id.* at 385, 109 S.E.2d at 225 (citation omitted).

Applying this rule in *City of Winston-Salem v. Tickle*, 53 N.C. App. 516, 281 S.E.2d 667 (1981), *disc. review denied*, 304 N.C. 724, 288 S.E.2d 808 (1982), our Court held that all of the tracts making up a family-owned cattle farm was property affected by the taking of a portion of the property although the farm was divided by two roads and a railway. This Court found "that with a single exception the property was devoted to the single use of cattle farming." *Id.* at 524-25, 281 S.E.2d at 672. But our Court in *Tickle* did exclude one of the parcels from the area affected because that parcel was not used for farming. *See id.* at 527, 281 S.E.2d at 674.

Our General Assembly codified the *Barnes* rule in 1981 providing that "all contiguous tracts of land that are in the same ownership and are being used as an integrated economic unit shall be treated as if the combined tracts constitute a single tract." N.C. Gen. Stat. § 40A-67; *see also Dept. of Transportation v. Nelson Co.*, 127 N.C. App. 365, 368, 489 S.E.2d 449, 451 (1997) (holding that a partially completed office park being constructed as part of a master development plan met the unity of use requirement). It follows that where the uses of the tracts in question are independent of the portion which is taken rather than a part of the integrated economic unit, the tracts cannot be included as part of the area affected by the taking. *See N.C. Dept. of Transportation v. Kaplan*, 80 N.C. App. 401, 343 S.E.2d 182 (holding that two tracts were not unified because on the date of the taking neither tract was necessary to the "use and enjoyment" of the other tract), *disc. review denied*, 307 N.C. 269, 299 S.E.2d 214 (1982).

At the time of the taking in this case, the landowners held the four remaining tracts for commercial development. However, the tracts were not being held for "development under a common plan or scheme," as in *Yarbrough*, and the best and highest use of tracts C and D remained economic development after the taking. Because the defendants' use and enjoyment of tracts C and D were not related to

their use of tracts A and B, nor related to or affected by the area taken, no unity of use exists in this case. We, therefore, conclude that the trial court erred in finding that tracts C and D were part of the area affected by the taking.

## II. CONSTITUTIONALITY OF N.C.G.S § 136-112(1)

The defendants next challenge the constitutionality of the provision allowing the fair market value of the remainder tract of land to be set off with any "special or general benefits resulting from the utilization of the part taken for highway purposes" under N.C.G.S. § 136-112(1). They contend that allowing a setoff for "general benefits" resulting from the taking violates the property owners' rights to (A) just compensation and (B) equal protection by depriving them of the just compensation received by other property owners also subjected to condemnation proceedings. We address each argument separately.

## A. JUST COMPENSATION

"The right to take private property for public use, the power of eminent domain, is one of the prerogatives of a sovereign state." *State v. Core Banks Club Properties, Inc.*, 275 N.C. 328, 334, 167 S.E.2d 385, 389 (1969). But this "right of eminent domain lies dormant in the State until the legislature, by statute, confers the power and points out the occasion, mode, conditions and agencies for its exercise." *Id.* That right, however, "is limited by the constitutional requirements of due process and payment of just compensation for property condemned." *Id.* at 334, 167 S.E.2d at 388.

Under N.C. Gen. Stat. § 136-18 (1999), our General Assembly delegated to the Department of Transportation the right to condemn private property for the establishment and maintenance of public highways. N.C.G.S. § 136-112 sets out the method for determining "just compensation" for owners of property condemned for highway purposes. Under that statute, the method used to determine just compensation when only a part of a tract of land is taken for the construction of highways is

the difference between the fair market value of the entire tract immediately prior to taking and the fair market value of the remainder immediately after taking, with consideration being given to any special or general benefits resulting from the utilization of the part taken for highway purposes.

N.C.G.S. § 136-112(1). The statutory term "special benefits" refers to those benefits which arise from the peculiar relation of the land in question to the public improvement, while the term "general benefits" refers to those benefits which accrue to the public at large by reason of increased community prosperity resulting from the project. *See Kirkman v. State Highway Commission*, 257 N.C. 428, 433, 126 S.E.2d 107, 112 (1962), *Dept. of Transportation v. McDarris*, 62 N.C. App. 55, 302 S.E.2d 277 (1983).

Although the General Assembly may enact a statute to determine the amount of just compensation to be given to landowners of condemned property, a statutory provision that transgresses the authority vested in the legislature by the Constitution empowers the judiciary to declare the act unconstitutional. *See Glenn v. Board of Education*, 210 N.C. 525, 529, 187 S.E. 781, 784 (1936) (stating that "[i]t is well settled in this State that the courts have the power, and it is their duty, in proper cases to declare an act of the General Assembly unconstitutional—but it must be plainly and clearly the case"); *Wilson v. High Point*, 238 N.C. 14, 23, 76 S.E.2d 546, 552 (1953) (holding that the courts have a duty when it is clear a statute transgresses the authority vested in the legislature by the Constitution to declare the act unconstitutional).

Indeed, our Supreme Court has addressed many issues arising from the language of N.C.G.S. § 136-112(1). *See Kirkman*, 257 N.C. at 432, 126 S.E.2d at 111; *Highway Commission v. Black*, 239 N.C. 198, 79 S.E.2d 778 (1954); *Robinson v. State Highway Commission*, 249 N.C. 120, 105 S.E.2d 287 (1958); *Williams v. Highway Commission*, 252 N.C. 514, 114 S.E.2d 340 (1960); *Templeton v. State Highway Commission*, 254 N.C. 337, 118 S.E.2d 918 (1961). But our Supreme Court has never addressed the issue presented in this appeal— whether the provision allowing *special* and *general* benefits to set off the fair market value of the remaining part of a tract of land under N.C.G.S. § 136-112(1) violates the constitutional requirement of providing just compensation in condemnation proceedings. Since the parties now bring this issue of first impression to this Court, we begin our consideration of this issue by looking at the just compensation methods employed by other jurisdictions to guide us in our determination.

## 1. RULES IN OTHER JURISDICTIONS ON THE USE OF SPECIAL AND GENERAL BENEFITS IN CALCULATING JUST COMPENSATION

The general rule in partial takings cases is that "special benefits" may be used to set off damages to the remaining property, but not to offset the compensation due for the property taken. *See* 3 Nichols on Eminent Domain, § 8A.03, pp. 8A-46. In fact, jurisdictions[1] following the general rule have held that "a statute which authorizes the payment of any sum that is less than the market value of the land actually taken is unconstitutional." *See id.* at pp. 8A-48.

For instance, in *City of Orofino v. Swayne,* 504 P.2d 398 (Idaho 1972), the Idaho Supreme Court held that under Idaho's eminent domain statute, benefits which may accrue to the property remaining from a taking may not be considered, except as a setoff against the damages that have accrued to the remaining property as a result of the taking. The Idaho Court recognized that the tendency has been away from the rule that special benefits can be set off from the entire compensation. Instead, the Idaho Court reasoned that the development of the rule that the land taken, at least, must be paid for in money without consideration of benefits to the remaining land is,

'undoubtedly explained by the fact that the propensity of many American communities to be over-sanguine in regard to the beneficial results of projected public improvements had resulted in the taking of much valuable private property for which the owner never received any compensation other than anticipated benefits which never accrued.'

*Id.* at 401 (quoting 3 Nichols on Eminent Domain (Rev. 3d. ed.) § 8.6206(1) p. 97).

1. *City of Orofino v. Swayne,* 504 P.2d 398 (Idaho 1972); *Chiesa v. State,* 43 A.D.2d 359, 360-61 (N.Y. 1974); *William Natural Gas Co. v. Perkins,* 952 P.2d 483 (Okla. 1997) (holding that in a partial taking case in which condemnor is taking only part of condemnee's property, an increase in the value of remaining property may be offset against any injury to the remaining property, but an increase in the value of the remaining property may not be offset against the value of property that was taken); *State Dep't of Highways v. Stegemann,* 269 So.2d 480 (La. 1972) (holding that a landowner is entitled to demand at least the fair market value of the property taken in money from an expropriating authority, even though he may be damaged to a lesser extent by the taking); *State Highway Comm'n v. Hooper,* 488 P.2d 421 (Or. 1971) (holding that special benefits to the remainder as a result of a partial taking may be used only to reduce any damages claimed to the remainder and cannot be used to reduce the fair market value of the land actually taken); *State v. Carpenter,* 89 S.W.2d 979 (Tex. Comm'n App. 1936) (holding that where a portion of land is taken by condemnation, damages to the remainder can be offset by benefits allowed by the law).

Likewise, in *Chiesa v. New York*, 43 A.D.2d 359 (N.Y. App. Div. 1974), the New York Appellate Court held that it would be unconstitutional to allow any benefits to the claimant's remaining lands from the State's appropriation of a portion of the claimant's property to be used as an offset against the award for direct damages for the property taken. In reaching this holding, the New York Court determined that the "application of a rule permitting a setoff against direct damages for enhancement to the remainder would be an unconstitutionally discriminate exercise of taxing power in favor of a neighboring owner who suffers no loss of land, but benefits by the public improvement which led to the taking." *Id.* at 360. The New York Court found that just compensation

> means fair and adequate monetary compensation for land actually taken, regardless of any benefits which may be conferred upon the remainder due to the direct taking. . . .

*Id.*

Notwithstanding the general rule, the United States Supreme Court, along with a number of other jurisdictions, has held that in partial takings cases, setting off the value of the remaining part of the land with "special benefits" resulting from the purpose for which a portion of the tract of land was taken does not violate a property owner's right to just compensation.[2] According to the Supreme Court, "[j]ust compensation means a compensation that would be just in regard to the public, as well as in regard to the individual." *Bauman v. Ross*, 167 U.S. 548, 570, 42 L. Ed. 270, 281 (1897). Moreover, the "just compensation required by the Constitution to be made to the [property] owner is to be measured by the loss caused to him by the appropriation." *Id.* at 574, 42 L. Ed. at 283. Therefore, the property owner "is entitled to receive the value of what he has been deprived of, and no more." *Id.*

> Consequently, when only part of a parcel of land is taken for a highway, the value of that part is not the sole measure of the com-

---

2. *See Bauman v. Ross*, 167 U.S. 548, 42 L. Ed. 270 (1897); *Lazenby v. Arkansas State Highway Comm'n*, 331 S.W.2d 705 (Ark. 1960) (holding that when the taking is by a municipal corporation, special benefits may be set off, even from the value of the land taken); *State v. Midkiff*, 516 P.2d 1250 (Haw. 1973) (holding that in non-highway taking cases, special benefits may be set off against the value of the part taken and severance damages); *Collins v. State Highway Comm'n*, 66 P.2d 409 (Ari. 1973) (holding that when a municipal corporation acquires property for a highway purpose, special benefits may be setoff from the value of the land taken and damages); *State v. Ward*, 252 P.2d 279 (Wa. 1953) (holding that when the taking is by a state or municipal corporation, benefits may be set off from the value of the property taken and damages).

pensation or damages to be paid to the owner; but the incidental injury or benefit to the part not taken is also to be considered.

*Id.*

In contrast to the general rule's application to "special benefits", most jurisdictions[3] hold that "general benefits" may not be used to set off damages "because the owner whose land is taken would be placed in a worse position than his neighbor whose estate lies outside the path of improvement and who shares in the increased value without any pecuniary loss." Nichols, § 8A.03, pp. 8A-47.

> Arguably the setoff of general benefits denies the condemnee the constitutional guarantee of just compensation since he is singled out and deprived of a share in the increased prosperity of his fellow citizens merely because the public happens to want a portion of his land. The condemnee pays in taxation for his share of general benefits, just as other members of the public, and therefore is entitled to receive his fair portion of general advantages brought about by a public improvement.

However, the United States Supreme Court left the determination as to whether using *general* benefits as a setoff deprives a property owner of just compensation to the states. In fact, the Court stated that:

> we are unable to say that [the property owner] suffers deprivation of any fundamental right when a state goes one step further and permits consideration of actual benefits—enhancement in market value—flowing directly from a public work, although all in the neighborhood receive like advantages. In such case the owner really loses nothing which he had before; and it may be said with reason, there has been no real injury.

---

3. *See e.g., Phoenix Title & Trust Co. v. State of Arizona ex rel. Herman,* 425 P.2d 434 (Ariz. 1967); *Lazenby v. Arkansas State Highway Comm'n,* 331 S.W.2d 705 (Ark. 1960); *Denver Joint Stock Land Bank v. Bd. of County Comm'rs of Elbert County,* 98 P.2d 283 (Colo. 1940); *Schwartz v. City of New London,* 120 A.2d 84 (Conn. Com. Pl. 1955); *Acierno v. State of Delaware,* 643 A.2d 1328 (Del. Supr. 1994); *City of Wichita v. May's Co. Inc.,* 510 P.2d 184 (Kan. 1973); *Louisiana Power & Light Co. v. Lasseigne,* 240 So.2d 707 (La. 1970); *Amory v. Commonwealth,* 72 N.E.2d 549 (Mass. 1947); *State Highway Comm'n v. Vorhof-Duenke Co.,* 366 S.W.2d 329 (Mo. 1963); *Frank v. State, Dep't of Roads,* 129 N.W.2d 522 (Neb. 1964); *State Highway Comm'n v. Bailey,* 319 P.2d 906 (Or. 1957); *State v. Davis,* 140 S.W.2d 861 (Tex. Civ. App. 1940), *disapproved by State v. Meyer,* 403 S.W.2d 366 (Tex. 1966); *State Highway Comm'n v. Rollins,* 471 P.2d 324 (Wyo. 1970).

*McCoy v. Union Elevated R.R. Co.*, 247 U.S. 354, 366, 62 L. Ed. 1156, 1164 (1918); *see McRea v. Marion County*, 133 So. 278, 279 (Ala. 1931) (stating that "the United States Supreme Court leaves the question to the states, with assurance that, if the Constitution and laws of the state permit a deduction of general benefits, it will not violate the Fifth and Fourteenth Amendments to the United States Constitution").

Accordingly, some states[4] do not follow the majority rule; rather, these states allow both *special* and *general* benefits to set off either the severance damages or the value of the land of the property taken. *See* Nichols, § 8A.03, pp. 8A-47.

## 2. THE EFFECT OF NORTH CAROLINA'S USE OF SPECIAL AND GENERAL BENEFITS IN CALCULATING JUST COMPENSATION

In North Carolina, N.C.G.S. § 136-112(1) permits both *special* and *general* benefits to set off the value of the land taken for highway purposes. Most recently, this Court in *Department of Transportation v. Mahaffey*, 2000 WL 390133 137 N.C. App. 511, 528 S.E.2d 381 (2000) in construing *Bauman*, 167 U.S. at 574, 42 L. Ed. 2d at 283, stated that:

[a]s we are unable to discern any material difference before the *Bauman* court and section 136-112, we hold section 136-112 does not violate the federal Due Process Clause.

*Mahaffey*, 137 N.C. App. at 517, 528 S.E.2d at 385.

In *Bauman*, the United States Supreme Court upheld a federal statute which provided that in estimating damages for the taking of any land, the jury should take into consideration the benefit to the owner by enhancing the value of the remainder of his land. *Bauman*, 167 U.S. at 548, 42 L. Ed. 2d at 270. The statute in *Bauman*—unlike N.C.G.S. § 136-112(1)—also provided for an assessment of one-half the cost of any improvement upon the adjacent property and directed that, in case any sum had been deducted for benefits from the award for land taken, allowance for the deduction should be made in determining the amount of the assessment. *Id.*

---

4. *See e.g., State ex rel. State Highway Comm'n v. Atchison, Topeka & Santa Fe Ry. Co.*, 417 P.2d 68 (N.M. 1966) (holding that the benefit of construction of a highway which enhances the value of a remainder of a tract of land is to be included in the determination of the value of the land after the taking); *Smith v. City of Greenville*, 92 S.E.2d 639 (S.C. 1956) (holding that the benefits to the residue of a landowner's land from the construction of a street should be appied against the value of the land actually taken).

The United States Supreme Court limited its decision in *Bauman* by its later pronouncement in *McCoy*, 247 U.S. at 354, 62 L. Ed. at 1156. In *McCoy*, the Supreme Court held that states have the discretion of determining whether using *general* benefits as a setoff deprives a property owner of just compensation. *McCoy*, 247 U.S. at 354, 62 L. Ed. at 1156. Thus, since we only addressed the applicability of *Bauman* in *Mahaffey*, we left undetermined the question of whether using *general* benefits as a setoff constitutes just compensation.

And, we again reiterate the holding of *Mahaffey* that the "special benefits" rule of N.C.G.S. § 136-112(1) is constitutionally sound. In comparing that provision with the various methods employed by other jurisdictions in calculating just compensation, we find that our statutory rule allowing "special benefits" to affect the value of the remaining tract of land does not violate the constitutional requirement of providing just compensation in condemnation proceedings. Indeed, since any resulting "special benefits" are uniquely enjoyed by the property condemned, assessing a cost through a setoff is constitutionally permissible and has been consistently approved by the United States Supreme Court, along with a number of other jurisdictions.[5] *See Kirkman*, 257 N.C. at 433, 126 S.E.2d at 112.

Moreover, given the legislature's discretion in determining just compensation, without a clear indication that a different result must exist, the legislature's enactment of the statute's provision for "special benefits" must be upheld. *See Glenn*, 210 N.C. at 525, 187 S.E. at 781; *Wilson*, 238 N.C. at 23, 76 S.E.2d at 552. For a different result to be reached, such a determination would have to made by our legislature, not this Court. *See id.*

[2] However, we reach a different conclusion as to our "general benefits" rule under N.C.G.S. § 136-112(1), which allows the *general* benefits to affect the value of the remaining property. Since "general benefits" are those benefits which accrue to the general public as a result of the condemnation of certain property for public purposes, that provision of the statute charges the property owner with a cost for those benefits that the public also enjoys without being subjected to any similar charge. *See McDarris*, 62 N.C. App. at 55, 302 S.E.2d at 277. In effect, the property owner is subjected to an involuntary taking of his property while also being subjected to the injustice of receiving an amount less than what he has actually lost. *See* Nichols,

---

5. *See* note 2, *supra.*

§ 8A.03, pp. 8A-49 ("Forcing the condemnee not only to give up a portion of his land, but also to receive nothing for it places a disproportionate share of the cost of the public improvement on his shoulders."). He is placed in a position where he is being required to carry the undue burden of paying an additional cost not paid by the public merely because his property has been taken for public purposes.

To emphasize the undue burden placed upon a property owner subjected to the provisions of N.C.G.S. § 136-112(1), consider the following hypothetical case: Farmer Jones owns 20 acres of land with a fair market value of $50,000.00. Through eminent domain, the government condemns 15 acres of Farmer Jones' property for highway purposes. In computing just compensation under N.C.G.S. § 136-112(1), the government determines that the value of the surrounding property and the remaining 5 acres has so greatly increased in value as a result of the new highway that Farmer Jones should get nothing for the 15 acres that it took from him. Farmer Jones' sacrifice of 15 acres of his land for the surrounding land owner and the public illustrates how a pure economic analysis can fail to import fairness and due process in condemnation damage determination. It further shows that the "cost and benefit" result of computing just compensation under N.C.G.S. § 136-112(1) fails to consider the private involuntary taking of land for public good. Should the government decide who will get the *full* benefit of his land at the *expense* of others? Surely the results under our statute suggest that had the government taken another landowner's land, then Farmer Jones would have enjoyed the increased valuation of his entire 20 acre tract.

Likewise, in this case the Department of Transportation condemned 11.411 acres of the defendants' 18.123 acres of property. In return, the defendants received no compensation for their taken property because the accrued benefits resulting from the roadway caused the fair market value of the remaining 6.712 acres to equal or exceed the fair market of the whole tract of land before the taking.

In essence, by allowing general benefits to set off the fair market value of the remaining land, the statute allows a compensation which is unjust to the condemnee while providing a windfall to the public. We agree with the rule in most jurisdictions that a statute, such as N.C.G.S. § 136-112(1), allowing *general* benefits to be used as a setoff is unconstitutional.[6] Accordingly, we hold that the provision

---

6. *See* note 3, *supra.*

regarding *general* benefits under N.C.G.S. § 136-112(1) violates, on its face and as applied to the defendants in this case, the constitutional requirement of providing just compensation in condemnation proceedings.

## B. EQUAL PROTECTION

**[3]** Alternatively, the defendants contend that N.C.G.S. § 136-112(1) violates the equal protection rights of the property owners who have part of a tract of land condemned for highway purposes because they are denied the just compensation received by other property owners also subjected to condemnation proceedings. We agree.

In addressing a claim that the Equal Protection Clause has been violated, the courts employ a two-tiered analysis. *See In re Consolidated Appeals of Certain Timber Companies from the Denial of Use Value Assessment and Taxation by Certain Counties*, 98 N.C. App. 412, 419, 391 S.E.2d 503, 507 (1990).

The upper tier is employed

[w]hen a governmental act classifies persons in terms of their ability to exercise a fundamental right . . . or when a governmental classification distinguishes between persons in terms of any right, upon some 'suspect' basis . . . .

*Texfi Industries, Inc. v. City of Fayetteville*, 301 N.C. 1, 11, 269 S.E.2d 142, 149 (1980) (citations omitted). This tier, calling for strict scrutiny, "requires the government to demonstrate that the classification is necessary to promote a compelling governmental interest." *Id.*

The lower tier is employed "[w]hen an equal protection claim does not involve a 'suspect class' or a fundamental right . . . ." *Id.* "This mode of analysis merely requires that distinctions which are drawn by a challenged statute or action bear some rational relationship to a conceivable legitimate governmental interest." *Id.*

In the present case, the defendants support their equal protection claim by comparing the method of determining just compensation under subsection (1) of N.C.G.S. § 136-112 with the methods of determining just compensation when: (1) part of a tract of land is condemned under Chapter 40A of the General Statutes and (2) a whole tract of land is condemned for highway purposes under subsection (2) of N.C.G.S. § 136-112.

Because just compensation—the basis of the classification in the present case—is a fundamental right protected under both the federal and state constitutions, we employ strict scrutiny in analyzing the defendants' equal protection claim. *See* U.S. Const. amend. V; N.C. Const. Art. I § 19.

As stated, N.C.G.S. § 136-112(1)'s provision allowing the general benefits to be used as a setoff violates the property owners' rights to just compensation for the property taking. However, a similar setoff is not imposed upon a property owner subjected to a taking under N.C. Gen. Stat. § 40A-64(b). In fact, this statute provides that for partial takings cases, the method for determining just compensation is

the greater of either (i) the amount by which the fair market value of the entire tract immediately before the taking exceeds the fair market value of the remainder immediately after the taking; or (ii) the fair market value of the property taken.

N.C.G.S. § 40A-64(b) (1999).

Therefore, a property owner will receive just compensation if the taking is imposed under N.C.G.S. § 40A-64(b), even though the same property owner is not entitled to compensation which is just if the imposed taking is under N.C.G.S. § 136-112(1). Both statutes involve partial takings cases with the difference being who is the condemnor. Under the former statute, the condemnor is an entity other than the Department of Transportation, while the Department of Transportation is the condemnor under the latter statute.

Hence the classification between N.C.G.S. § 40A-64(b) and N.C.G.S. § 136-112(1) is based on whether the taking is for highway purposes. Because there is no compelling governmental interest to support this classification, we must find that a property owner's equal protection rights are violated by allowing such a classification to exist.

Also, we find that a property owner's equal protection rights are violated by the distinction in the compensation method under subsection (1) of N.C.G.S. § 136-112 and the compensation method under subsection (2) of N.C.G.S. § 136-112. Subsection (2) of the statute, like N.C.G.S. § 40A-64(b), does not require a consideration of the general benefits resulting from the condemnation. In particular, N.C.G.S. § 136-112(2) provides that:

[w]here the entire tract is taken the measure of damages for said taking shall be the fair market value of the property at the time of taking.

N.C.G.S. § 136-112(2).

Thus, a property owner who has a whole tract of land condemned for highway purposes under N.C.G.S. § 136-112(2) receives just compensation, while a property owner who has only a part of a tract of land condemned for highway purposes does not receive just compensation. The result of the classification is that a property owner who has only a part of a tract of land condemned for highway purposes, as opposed to a whole tract of land condemned for the same purpose, is being penalized for not having his whole tract condemned. No compelling governmental interest exists to support such a penalty. Therefore, the provision allowing *general* benefits to be used as a setoff under N.C.G.S. § 136-112(1) violates, on its face and as applied to the defendants in this case, the constitutional requirements of equal protection under the law.

Finding N.C.G.S. § 136-112(1) to be violative of both the constitutional requirement of just compensation and the constitutional requirement of equal protection, we hold that the trial court erred in concluding "that the defendants . . . failed to present sufficient evidence to support the constitutional issues raised and the relief requested." For the reasons set out in our prior opinion filed herein, and because of the errors stated herein, there must be a

New trial.

Judge HUNTER concurs.

Judge HORTON dissents in part in a separate opinion.

Judge HORTON dissenting in part.

I concur in that portion of the majority opinion which holds that the trial court erred in finding that tracts C and D were part of the area affected by the taking of defendants' property. I respectfully dissent, however, from that portion of the majority opinion holding that N.C. Gen. Stat. § 136-112(1) violates "both the constitutional requirement of just compensation and the constitutional requirement of equal protection . . . ."

## I.

With regards to the constitutionality of N.C. Gen. Stat. § 136-112(1), most of the arguments now advanced by the defendants were not made in the trial court and are not properly before us on this appeal. *See State v. King*, 342 N.C. 357, 364, 464 S.E.2d 288, 293 (1995); *State v. Benson*, 323 N.C. 318, 322, 372 S.E.2d 517, 519 (1988). In their "Answer, Motions and Counterclaim," defendants allege as a First Defense "[t]hat N.C. Gen. Stat. § 136-112(1), insofar as it provides that the measure of damage be determined 'with consideration being given to any special or general benefits resulting from the utilization of the part taken for highway purposes,' " denies the defendants just compensation in violation of Article I, Section 19, of the North Carolina Constitution ("law of the land" provision); Amendment V to the United States Constitution ("just compensation" provision); and Amendment XIV to the United States Constitution ("equal protection" and "due process of law" provisions).

At a pretrial hearing pursuant to N.C. Gen. Stat. § 136-108, the defendants argued there were two bases for their constitutional challenge to N.C. Gen. Stat. § 136-112(1). Defendants first made an equal protection argument, contending that just compensation for a partial taking of property is calculated under two different statutory schemes: one for property owners whose lands were condemned by the Department of Transportation (DOT) pursuant to the provisions of Chapter 136, and the other for property owners whose lands were condemned by private and local public condemnors pursuant to the provisions of Chapter 40A of the General Statutes. In determining the issue of damages under the provisions of N.C. Gen. Stat. § 136-112(1), the finder of fact is to consider "general and special benefits" to the portion of the lands not taken, while under N.C. Gen. Stat. § 40A-64(b) no such consideration is mandated. Defendants argued to the trial court that since the measure of compensation was different depending on the identity of the condemning authority, landowners whose property was condemned were treated differently and thus deprived of equal protection. Defendants also stated prior to their argument on this point that their "constitutional attack on the benefits portion of Chapter 136 . . . *is based very simply on this premise* . . . ." (Emphasis added.)

The second argument made by defendants was that DOT acted arbitrarily and capriciously in failing to offer any compensation to defendants, treating these defendants in a different manner than other nearby landowners—such as Martin Marietta—who had been

paid compensation by DOT. That contention was properly overruled by the trial court due to an absence of evidence of arbitrariness or caprice by DOT, and is not before us at this time.

Further, two of defendants' Assignments of Error relate to the constitutional question raised by defendants. They are:

3. The Trial Court's denial of Defendants' constitutional defenses on the grounds that G.S. 136-12(1) [sic] violates the equal protection provisions of the United States and North Carolina Constitutions.

4. The Trial Court's allowing the Jury to consider the benefit to Defendants' property in making its determination as to damages recoverable by the Defendants for the taking in that this violated Defendants' rights to equal protection under the United States and North Carolina Constitutions.

Even according a generous interpretation to the Assignments of Error, it is obvious that defendants have not preserved and brought forward a constitutional challenge based on a due process argument. Further, a unanimous panel of this Court has recently squarely rejected such an argument in *Dept. of Transportation v. Mahaffey*, 137 N.C. App. 511, 528 S.E.2d 381 (2000) ("[S]ection 136-112 does not violate the federal Due Process Clause. It, therefore, follows our state constitution 'law of the land' clause is not violated.")

At most, then, defendants have brought forward (1) the equal protection argument they advanced below centering on the different measures of damages for landowners whose property is taken under Chapter 136 and those whose property is taken under Chapter 40A; and (2) an argument that the trial court erred in allowing the jury to consider the "special and general benefits" to defendants' property in determining damages. Thus, much of the majority opinion deals with questions of constitutional law which are not properly before us, and declares section 136-112(1) unconstitutional based on theories not advanced before the trial court. "[A] constitutional question which is not raised and passed upon in the trial court will not ordinarily be considered on appeal." *State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982).

## II.

The constitutional issue which is properly before us is whether the equal protection provisions of the Constitutions of the United

States and the State of North Carolina are violated by the different damages schemes found in sections 136-112(1) and 40A-64(b).

A sovereign state has the inherent power to take the property of its citizens for public use. The exercise of that power is limited, however, by constitutional guarantees of due process and payment of "just compensation" for the property taken. *State v. Club Properties*, 275 N.C. 328, 334, 167 S.E.2d 385, 388 (1969). In Chapter 136 of our General Statutes, our General Assembly confers the right of eminent domain on DOT, and sets out the method for determining just compensation for the property taken. N.C. Gen. Stat. § 136-103, *et seq.* Where an entire tract is taken, the measure of damages is "the fair market value of the property at the time of taking." N.C. Gen. Stat. § 136-112(2) (1999). Where only a portion of a tract is taken, as in the case before us,

> the measure of damages for said taking shall be the difference between the fair market value of the entire tract immediately prior to said taking and the fair market value of the remainder immediately after said taking, *with consideration being given to any special or general benefits resulting from the utilization of the part taken for highway purposes.*

N.C. Gen. Stat. § 136-112(1) (1999) (emphasis added). The burden of proof on the existence and amount of such special or general benefits is on DOT. *Board of Transportation v. Rand*, 299 N.C. 476, 480, 263 S.E.2d 565, 568 (1980). Defendants here contend that allowing the jury to consider the benefits to the remainder of their property affected by the taking violates their right to equal protection under the law. Defendants stress that where property is condemned by a private condemnor or a local public condemnor pursuant to the provisions of Chapter 40A of the General Statutes, a different method of determining damages is mandated. N.C. Gen. Stat. § 40A-64(b) provides that

> [i]f there is a taking of less than the entire tract, the measure of compensation is the greater of either (i) the amount by which the fair market value of the entire tract immediately before the taking exceeds the fair market value of the remainder immediately after the taking; or (ii) the fair market value of the property taken.

Our Supreme Court set out in *Texfi Industries v. City of Fayetteville*, 301 N.C. 1, 269 S.E.2d 142 (1980), the traditional two-

tiered "scheme of analysis when an equal protection claim is made." *Id.* at 10, 269 S.E.2d at 149. First,

> [w]hen a governmental act classifies persons in terms of their ability to exercise a fundamental right, or when a governmental classification distinguishes between persons in terms of any right, upon some "suspect" basis, the upper tier of equal protection analysis is employed. Calling for "strict scrutiny", this standard requires the government to demonstrate that the classification is necessary to promote a compelling governmental interest.

*Id.* at 11, 269 S.E.2d at 149 (citations omitted). I do not find evidence here that the defendants are members of a class which is "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command particular consideration from the judiciary." *Id.* Nor do I find an infringement of the defendants' constitutionally guaranteed right to just compensation for property taken for a public purpose. "Just compensation" is not defined in either our Constitution or that of the United States, but is left to the sound discretion of state legislatures. Our General Assembly has set out in N.C. Gen. Stat. § 136-112 the method for determining just compensation where property is taken by DOT.

Moving then to the second tier of the analysis, the question becomes whether N.C. Gen. Stat. § 136-112 bears a rational relationship to a legitimate governmental purpose. "This mode of analysis merely requires that distinctions which are drawn by a challenged statute or action bear some rational relationship to a conceivable legitimate governmental interest." *Texfi*, 301 N.C. at 11, 269 S.E.2d at 149.

Clearly, the construction and maintenance of a statewide system of roads is a legitimate public purpose. In the course of development of roads throughout the state, it is inevitable that some privately held property must be taken for public purposes. Our General Assembly has granted the power of eminent domain to DOT. N.C. Gen. Stat. § 136-18 (1999). In the interest of fairness and in satisfaction of constitutional guarantees that just compensation be paid to a citizen whose property is taken for public purposes, the General Assembly has set out in N.C. Gen. Stat. § 136-112 the measure of damages for such taking. All citizens whose property is taken by DOT have their damages measured by the same standard. I find here no

evidence that defendants have been treated in a different manner than other members of the class of persons affected by condemnation of a part of their property for highway purposes. After careful consideration of defendants' arguments and contentions, I cannot find any evidence of a violation of their constitutional rights to equal protection, and find support for my opinion in the prior decisions of our Supreme Court.

It has long been settled in North Carolina that it is within the power of the General Assembly to provide that, when only a portion of the landowner's property is taken in a condemnation action, the trier of fact is to consider both special and general benefits to the remainder of the landowner's property in determining the amount of just compensation to be paid him. *Miller v. Asheville*, 112 N.C. 759, 16 S.E. 762 (1893); *Wade v. Highway Com.*, 188 N.C. 210, 124 S.E. 193 (1924); *Elks v. Comrs.*, 179 N.C. 241, 102 S.E. 414 (1920); *Bailey v. Highway Commission*, 214 N.C. 278, 199 S.E. 25 (1938).

In *Miller*, our Supreme Court upheld the validity of an Act of our General Assembly providing that both general and special benefits must be considered in assessing landowners' damages arising from a condemnation of a portion of their property by the City of Asheville. "The Legislature, in conferring upon the corporation [City of Asheville] the exercise of the right of eminent domain, can *in its discretion* require all the benefits or a specified part of them, or forbid any of them to be assessed as offsets against the damages." *Miller*, 112 N.C. at 768, 16 S.E. at 764 (emphasis added). Where the legislature made no such provision, however, the "old" rule applied, and only special damages could be deducted. In *R.R. v. Platt Land*, 133 N.C. 266, 45 S.E. 589 (1903), after tracing the history of the rule, Justice Connor stated that *"in the absence of any express language to the contrary,* only special benefits can be deducted from the compensation or damages assessed against the corporation [Southport, Wilmington and Durham Railroad Company]." *Id.* at 274, 45 S.E. at 592.

In *Elks*, Chief Justice Clark, who authored the opinion in *Miller*, again cited the holding of the Supreme Court in *Miller* that the legislature could "authorize the deduction of general as well as special benefits from the damages assessed, but holding that if the statute does not so provide, only the special benefits will be deducted." *Elks*, 179 N.C. at 247, 102 S.E. at 417.

**DEPARTMENT OF TRANSP. v. ROWE**

[138 N.C. App. 329 (2000)]

In 1923, the General Assembly amended the statutes setting out the measure of damages in condemnations brought by the State Highway Commission, to provide that both "general and special benefits shall be assessed as off-sets against damages . . . ." Public Laws 1923, Chapter 160, sec. 6. Our Supreme Court, citing *Miller* with approval, upheld the validity of the change and its application to pending litigation in *Wade*, 188 N.C. 210, 124 S.E. 193. The Supreme Court remanded *Wade* to the trial court for a new trial on damages because the trial court only charged the jury to consider the special benefits accruing to the landowner, and did not include the general benefits to the landowner's remaining property. *Id.* Again, in *Bailey v. Highway Commission*, the Supreme Court remanded for a new trial because the trial court did not charge the jury to consider the general benefits to the landowner's remaining property as an offset against the amount of compensation. 214 N.C. 278, 279, 199 S.E. 25, 26 (1938). *See also Kirkman v. Highway Commission*, 257 N.C. 428, 433, 126 S.E.2d 107, 111 (1962), and the cases cited therein.

Thus, it appears that for more than a century, our Supreme Court has upheld the doctrine of *Miller v. Asheville* and the power of the General Assembly to provide that damages in a condemnation case may be offset by special benefits, general benefits, or both special and general benefits. In the exercise of its discretion, the General Assembly has provided for a different measure of damages where property is taken by private condemnors and local public condemnors under the provisions of Chapter 40A. N.C. Gen. Stat. § 40A-64(b). By contrast, where property is taken by DOT, as here, the jury is to take into account both special and general benefits in determining the issue of damages. N.C. Gen. Stat. § 136-112(1). I do not believe that any equal protection violation arises because of the distinction between the measure of damages in the two statutes. As Chief Justice Clark explained in *Elks*:

> The distinction seems to be that where the improvement is for private emolument, as a railroad or water power, or the like, being only a *quasi*-public corporation, the condemnation is more a matter of grace than of right, and hence either no deductions for benefits are usually allowed, or only those which are of special benefit to the owner, but *where the property is taken solely for a public purpose, the public should be called upon to pay only the actual damages, after deducting all benefits, either special or general.*

*Elks*, 179 N.C. at 245, 102 S.E. at 416-17 (emphasis added).

I am aware that our sister states have enacted a wide variety of statutory schemes with regard to the measure of damages in condemnation cases, and that many of them do not provide for an offset for special and general benefits against property which remains after a taking. *See* 3 Nichols on Eminent Domain, § 8A.03, pp. 8A-26 to 8A-29. However, as our Supreme Court has consistently held, that decision is for our legislature, not for this Court. "All the landowner can claim is that his property shall not be taken for public use without compensation. Compensation is had when the balance is struck between the damages and benefits conferred on him by the act complained of. To that, and that alone, he has a constitutional and vested right." *Miller*, 112 N.C. at 768, 16 S.E. at 764.

A statute is presumed to be constitutional, so one who challenges its constitutionality has the burden of establishing it. *State v. Johnson*, 124 N.C. App. 462, 474, 478 S.E.2d 16, 23 (1996), *cert. denied*, 345 N.C. 758, 485 S.E.2d 304 (1997). I agree with the trial court, which concluded after a hearing "that the defendants have failed to present sufficient evidence to support the constitutional issues raised and the relief requested."

III.

In their fourth Assignment of Error, defendants argue that the trial court erred in allowing the jury to consider the benefits to their property in determining damages. Although I find no constitutional infirmity in our statutory scheme for measuring damages in a Chapter 136 condemnation action, I also note that defendants did not object to the jury charge of the trial court relating to calculation of damages. Prior to submission of the case to the jury, the trial court held a charge conference and explained to counsel that it would be using section 835.12 of the Pattern Jury Instructions, "which is the eminent domain, partial taking by the DOT and I will include the benefit portion of that charge." Defendants did not object to the use of the pattern instruction, and asked only that the trial court use section 101.25 on expert witnesses, and section 101.30, dealing with interested witnesses.

The trial court then charged the jury, among other things, that in determining defendants' damages it might consider "any general or special benefits resulting from the utilization of the part [of the property] taken for public use." After completion of the charge, the trial court asked counsel in the absence of the jury whether they had objections, changes, additions, or deletions to the charge. Counsel for

the defendants answered that they did not. It appears that defendants cannot now assign error to any portion of the jury charge, particularly to those portions in which the trial court instructed the jury on the measure of damages. N.C.R. App. P. 10(2).

While I agree that the defendants are entitled to a new trial for reasons set out in our prior opinion in this case, and in Section I of the majority opinion, I dissent from that portion of the majority opinion which would declare N.C. Gen. Stat. § 136-112(1) unconstitutional for reasons not properly before us. In any event, we are not justified in declaring invalid this enactment of our legislature, its unconstitutionality not being "plainly and clearly the case." *Glenn v. Board of Education of Mitchell County, et. al.*, 210 N.C. 525, 187 S.E. 781 (1936).