## McCOY ET AL., EXECUTORS OF McCOY, v. UNION ELEVATED RAILROAD COMPANY ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 190.    Argued March 14, 15, 1918.—Decided June 3, 1918.

The contract clause relates to legislative, not to judicial, action impairing obligation of contracts.

In an action for damages to abutting property due to construction, maintenence and operation of an elevated railroad, in a street of which the fee was in the public, the state court held that recovery depended upon the effect on market value, in determining which increase of such value arising from increase of travel should be considered and treated as a special benefit, though enjoyed also by other neighboring property. *Held*, that there was no basis for invoking the equal protection clause, and that the ruling did not deprive of property without due process of law.

Where private property is taken for public purposes, the fundamental right guaranteed by the Fourteenth Amendment is that the owner shall not be deprived of the market value under a rule of law which makes it impossible for him to obtain just compensaticn. There is no guarantee that the rule adopted by the State shall be the one best supported by reason or authority, or against mere errors in the course of the trial,

It is almost universally held that, in arriving at the amount of damages to property not taken, allowance should be made for peculiar and individual benefits conferred upon it, and it cannot be said that extension of the rule to include increase of market value resulting directly from the public improvement where all property in the neighborhood is similarly benefited deprives of the fundamental right protected by the Amendment.

271 Illinois, 490, affirmed.

THE case is stated in the opinion.

Mr. Harry S. Mecartney, with whom Mr. John S. Miller was on the briefs, for plaintiffs in error.

*Mr. Francis W. Walker* and *Mr. Roger L. Foote*, with whom *Mr. Addison L. Gardner* and *Mr. Randall W. Burns* were on the brief, for defendants in error.

Mr. Justice McReynolds delivered the opinion of the court.

William A. McCoy, testator of plaintiffs in error, owned a hotel situated at the northwest corner of Clark and Van Buren Streets, Chicago. During 1897 defendants constructed along the latter street and in front of the building an elevated passenger railroad of the ordinary type and have continued to maintain and operate it. Charging that construction, maintenance and operation of the railroad had caused and would continue to cause injury to the property by noise, smoke, dirt, shutting off air and light, disturbing privacy and impairing the freedom of ingress and egress and that its market value had been greatly reduced, McCoy brought a common law action (September, 1902) in a state court to recover the entire damage.

The declaration does not allege plaintiff's ownership of the fee in the street, but asserts his interest in the lot and right to the "easements and privileges which legally appertain and rightfully belong to property abutting public streets" in Chicago, including the right of light, air, access, privacy, view, etc. Trial to a jury upon plea of not guilty, during February, 1914, resulted in verdict for defendants and judgment thereon was affirmed by the Supreme Court, a writ of error having been sued out by McCoy's executors. 271 Illinois, 490. That court's statement of facts follows:

"During the years 1896 and 1897 what is generally known as the 'loop' was constructed, under authority conferred by ordinances of the city of Chicago, for the joint use of the three systems above mentioned and an-

other elevated system then in course of construction. The loop consists of an elevated structure in the streets encircling the central portion of the business district of the city, upon which are laid tracks for the passage of the elevated trains of all of the defendant companies completely around the central portion of the business district. Before the construction of the loop the elevated trains of the defendant companies stopped at their respective terminals. The structure forming the south side of the loop was placed in that portion of Van Buren street extending from Wabash avenue on the east to Fifth avenue on the west, Clark street being one of the streets intersecting Van Buren street between these two avenues. Stations to permit passengers to board and leave the elevated trains were established at intervals around the loop and stairways were constructed leading from each station to the surface of the street. One of these stations in Van Buren street was established at La Salle street, about one hundred feet west from the McCoy Hotel, and another was established at Dearborn street, about three hundred feet east from the hotel. The elevated structure in Van Buren street obstructed the passage of light to the store rooms in McCoy's building, and the noise from the passage of trains over the structure and the fact that passing trains were on a level with the windows of the second floor of the building rendered the rooms on the south side of the second and third floors of the building less desirable for hotel purposes. Large upright columns supporting the elevated structure were placed just inside the curb in front of the premises and rendered the premises less accessible from the street.

"There is no material controversy over the facts in the case. The witnesses all agree that the matters above mentioned, when considered by themselves, would be detrimental to the premises. They also agree that there was a steady increase of from five to ten per cent. per year

in the value of the premises from the construction of the loop until 1905. It also appears from the evidence that the rents from the store rooms on the ground floor constantly increased after 1897. The plaintiff called but one real estate expert as a witness. He testified that the damages to the property from the construction of the elevated structure, and the operation of the trains thereon, amounted to $81,999, being fifteen per cent. of the value which the witness placed upon the interest of McCoy in the premises. He admitted that there had been a continuous increase in the value of the premises since the completion of the loop, and that a portion of that increase, which he said it was impossible to estimate, was due to the increased travel brought to the premises by the elevated railroad, but that he did not take that into consideration in fixing the damages. The real estate experts called by the defendants, on the other hand, testified that at least one-half of the increase in the value of the premises was due to the increased travel in front of the premises resulting from the operation of the elevated railroad in Van Buren street as a part of the loop. In support of the testimony of these witnesses defendants proved that the number of persons boarding the elevated trains at the La Salle street station, in Van Buren street, during the three months of the year 1897 in which trains were operated around the loop, was 161,763, and that the number constantly increased until in 1905 there was 3,659,583 persons who boarded the trains at that station. It was also shown that during the period in 1897 above mentioned 194,904 persons boarded the elevated trains at the Dearborn street station, in Van Buren street, and that the number constantly increased each year until in 1905 there were 2,558,976 persons who boarded the trains at that station."

During the trial, over plaintiff's objections, questions concerning evidence were determined in accordance with

repeated rulings by the Illinois Supreme Court that the effect of construction, maintenance and operation of an elevated road upon market value was the point for determination; and that increase in such value caused by the improvement itself should be considered and treated as a special benefit, although enjoyed by other neighborhood property.

Among others, plaintiff requested the following instructions:

"The jury are instructed that the constitution of this state provides that 'private property shall not be taken or damaged for public use without just compensation.' This action is brought by plaintiff for an alleged damage to the property of plaintiff arising from the construction [maintenance and operation] of the structure in the abutting street for elevated railroad purposes. Such damages in the eye of the law can only be a loss in the market value of the property arising from the said construction, [maintenance and operation] for the purposes aforesaid. Whether the premises in question have in fact been so damaged is for the jury to find from the evidence, according to the method and within the limitations of other instructions given you.

"The court instructs the jury that 'benefits' and 'damages' spoken of in the instruction mean benefits and damages to the market value thereof, and that by the term 'market value' of property, as used in these instructions, is meant the price at which the owner if desirous of selling, would under ordinary circumstances surrounding the sales of property have sold the property for, and what a person desirous as purchaser would have paid for it under the same circumstances."

"The jury are instructed that in considering the question of whether the premises in question were or were not damaged by the construction of the structure in the abutting street for elevated railroad purposes,

they are to exclude from consideration all benefit which
accrued to the said premises or to the owners thereof by
reason of improved travel facilities furnished by said
elevated railroad."

The words "maintenance and operation" were inserted
in the first of these requests and as thus amended it was
given; the others were refused.

The following instructions were also given:

"The court instructs the jury that benefits and dam-
ages spoken of in these instructions mean benefits and
damages to the fair cash market value thereof and that
by the term fair cash market value of the property as
used in these instructions is meant its value as determined
by what it would sell for in the market for cash in the due
course of business.  This does not mean the price at
which it would sell under special circumstances, but its
value as sold in the market under ordinary circumstances
for cash, and not on time, and assuming that the owner is
willing and not compelled to sell and the purchaser is
willing and under no compulsion to purchase."

"The jury is instructed that if you believe from the
evidence that plaintiff's premises have been increased
in their fair, cash, market value by the construction,
maintenance and operation of defendants' said railroad,
and if you also believe from the evidence that other
property in the neighborhood of the plaintiff's premises
not abutting upon the defendants' railroad have been
likewise increased in their fair, cash, market value by the
construction, maintenance and operation of said railroad,
but to a greater extent than the plaintiff's said premises,
you have no right from that fact to find that the plain-
tiff's premises have been damaged.

"Special benefits are such benefits as are special or
peculiar to a particular piece of property, and which
beneficially affect its fair, cash, market value, as distin-
guished from those benefits which are common to the

public at large, and which are termed general benefits;
and you are instructed that in determining the effect
of the construction, maintenance and operation of de-
fendants' elevated railroad upon the fair, cash, market
value of plaintiff's said premises, you are not to take into
consideration any general benefits which you may be-
lieve from the evidence to have arisen out of the construc-
tion, maintenance and operation of said elevated railroad,
but you should take into consideration special benefits,
if any, shown by the evidence, to plaintiff's said premises
from the construction, maintenance and operation of de-
fendants' said elevated railroad.

"The jury is instructed that if you believe from the
evidence that the property of the plaintiff described in
the declaration of this case was enhanced in its fair,
cash, market value by reason of the construction, main-
tenance and operation of the elevated railroad of the
defendants, such increase in market value is a special ben-
efit to the property of the plaintiff and not a general ben-
efit, notwithstanding you may believe from the evidence
that the other property in the vicinity of plaintiff's prop-
erty also was enhanced in fair, cash, market value to a
greater or less degree by reason of the construction,
maintenance and operation of defendants' said elevated
railroad."

"The jury is instructed that the measure of damages
in a case of this kind is the difference between the fair,
cash, market value of the premises with the elevated
railroad constructed, maintained and operated in the
street in front of it, and what the fair, cash, market value
of said premises would have been had not said elevated
railroad been so constructed, maintained and operated.
If you believe from the evidence that the fair, cash,
market value of the plaintiff's premises with the railroad
constructed, maintained and operated in Van Buren
street has not been diminished below what you believe

from the evidence the fair, cash, market value of said premises would have been if the said elevated railroad had not been constructed, maintained and operated in said street, then said plaintiff's premises have not been damaged by the construction, maintenance and operation of defendants' elevated railroad."

The Supreme Court said:

"The contention made by plaintiffs in error upon which most of the assignments of error depend is, that the benefits to the premises by reason of the increased travel in front of the premises resulting from the operation of the elevated railroad in Van Buren street as a part of the loop cannot be considered in determining whether the premises have been damaged by the construction of the elevated structure and the operation of trains thereon, first, because such benefits are general benefits, common to all the property in the vicinity; and second, because such benefits are conjectural and speculative. The same contention was made in *Brand* v. *Union Elevated Railroad Co.*, 258 Ill. 133, *Geohegan* v. *Union Elevated Railroad Co.*, 258 *id.* 352, and *Geohegan* v. *Union Elevated Railroad Co.*, 266 *id.* 482, and in each of those cases we held that such benefits should be considered in determining whether premises abutting on a public street have been damaged by the construction and operation of an elevated railroad in such street. The reasons for such holding were fully set forth in the opinions filed in the cases above mentioned and it would serve no useful purpose to repeat them here. It is sufficient to say that we adhere to the views expressed in the former cases involving the same question as is here presented. . . . Complaint is made of the action of the court in giving certain instructions on behalf of defendants in error and in refusing or modifying certain instructions submitted by complainant. . . . Moreover, the evidence in this case would not have sustained a verdict in favor of the plain-

tiff, and any error committed by the trial court in giving, refusing or modifying instructions was therefore harmless.".

In their brief here counsel for plaintiffs in error declare:

"Plaintiff presented his case, therefore, upon the basis that his damage was to be estimated:

"(1) By taking the market value of the premises immediately before the advent of the Loop; then

"(2) To consider how the structure in question placed in the block upon which his premises abutted (which defined the 'physical' scope of his property or rights)— *forever dedicated to railroad uses and to be operated therefor*, would actually interfere with the *actual use and enjoyment* of the premises; and then

"(3) To estimate to what extent such structure put or dedicated to such use, would reduce that market value. That is, to *capitalize* the permanent *interference*, i. e., damage. (As laid down in Lewis, 3d Ed., § 693.)

"In the trial court the main conflict was waged over the question as to whether or not the court should admit on behalf of defendants evidence of 'general' or 'travel' benefits occurring from the establishment of the Loop in its *entirety*, or whether the evidence should be held down to the issue of 'direct, proximate and physical effect.' Said court, following the late ruling of the Illinois Supreme Court in *Brand* v. *Union Elev. R. R. Co.*, 258 Ill. 133 (a review of which was asked in this court in 238 U. S. 586, same title), tried the case upon the basis of allowing this special damage to be offset or reduced by, or considered in connection with the estimated amount of market benefit that accrued to the premises from 'travel benefits.'"

And they now maintain that the judgment below is erroneous because it (1) impairs the contract which their testator made when he purchased the property contrary to § 10, Article I, Federal Constitution, (2) denies to them

the equal protection of the laws and (3) deprives them of property without due process of law in violation of the Fourteenth Amendment. The first claim is clearly untenable; the contract clause prohibits legislative not judicial action. *Ross* v. *Oregon,* 227 U. S. 150, 161, 164; *Moore-Mansfield Co.* v. *Electrical Co.,* 234 U. S. 619, 623, 624; *Frank* v. *Mangum,* 237 U. S. 309, 344. Nothing in the record affords support for the second claim. The third demands consideration.

We may examine proceedings in state courts for appropriation of private property to public purposes so far as to inquire whether a rule of law was adopted in absolute disregard of the owner's right to just compensation. If the necessary result was to deprive him of property without such compensation then due process of law was denied him, contrary to Fourteenth Amendment. *Chicago, Burlington & Quincy R. R. Co.* v. *Chicago,* 166 U. S. 226, 246; *Backus* v. *Fort Street Union Depot Co.,* 169 U. S. 557, 565; *Fayerweather* v. *Ritch,* 195 U. S. 276, 298. Our concern is not to ascertain whether the rule adopted by the State is the one best supported by reason or authority nor with mere errors in course of trial but with denial of a fundamental right. *Appleby* v. *Buffalo,* 221 U. S. 524, 532. And see *McGovern* v. *New York,* 229 U. S. 363, 371. And here it must be noted that the claim is for damages to property not actually taken from the owner's dominion.

The Illinois constitution provides: "private property shall not be taken or damaged for public use without just compensation." In *Peoria, Bloomington & Champaign Traction Co.* v. *Vance,* 225 Illinois, 270, 272, where the owner sought damages to the balance of his farm resulting from taking a right-of-way for an electric road, the court pointed out the applicable doctrine long established in the State. It said:

"Since the adoption of the constitution of 1870 it has

been uniformly held by this court, in such cases as this, that the measure of damages to land not taken is 'the difference in the fair cash market value of the land before and after the construction of the railroad,' or 'the amount, if any, which lands not taken will be depreciated in their fair cash market value by the construction and operation of the proposed road.' . . . Under the rule adopted in this State for determining whether, or in what amount, property not taken will be damaged by the construction and operation of a railroad, any benefits which are not conjectural or speculative, and which actually enhance the market value of such property, are to be considered as special benefits and not as general benefits, within the meaning of the rule that general benefits cannot be considered in determining whether, or in what amount, property not taken will be damaged. Special benefits do not become general benefits because the benefits are common to other property in the vicinity. The fact that other property in the vicinity of the proposed railroad will also be increased in value by reason of the construction and operation thereof furnishes no excuse for excluding the consideration of special benefits to the particular property in determining whether it has been damaged, and if it has, the extent of the depreciation in value."

This doctrine was again expressly affirmed in *Brand* v. *Union Elevated R. R. Co.*, 258 Illinois, 133—a proceeding like the present one to recover damages caused by constructing, maintaining and operating an elevated railroad along the street. The trial court below accepted and applied the approved rule and we are now asked to declare that it absolutely disregards the owner's fundamental right to just compensation—that it necessarily deprives him of such compensation.

How far benefits must be considered in determining damages to property when claimed on account of a public improvement is a vexed question which has given occasion

for numberless decisions in different States, as well as much legislation. The matter is elaborately treated and the cases collected in Lewis on Eminent Domain. and Nichols on Eminent Domain. In the former, § 687, 3d ed., it is said: "The decisions may be divided into five classes, according as they maintain one or the other of the following propositions: First. Benefits cannot be considered at all. Second. Special benefits may be set off against damages to the remainder, but not against the value of the part taken. Third. Benefits, whether general or special, may be set off as in the last proposition. Fourth. Special benefits may be set off against both damages to the remainder or the value of the part taken. Fifth. Both general and special benefits may be set off as in the last proposition." The latter work at § 256, 2d ed., says: "It is universally recognized that when there is no taking the damages to a tract of land from the construction of a public work cannot be correctly ascertained without determining whether the tract has been depreciated in value, and to determine this all the effects of the public work, beneficial or injurious, must be considered. Strictly speaking, it is said, it is not a question of benefits at all, except that proof of benefits might be one way of showing that there had been no injury. The real question is, had the property in question been decreased in market value by the construction of the public improvement, and the amount of damage is the decrease in such value. In most States however it is only special benefits that can be set off; but in the States which allow the set-off of general benefits to remaining land when part of a tract is taken, the same latitude is given in awarding damages when no land is taken."

The fundamental right guaranteed by the Fourteenth Amendment is that the owner shall not be deprived of the market value of his property under a rule of law which makes it impossible for him to obtain just compensation.

There is no guarantee that he shall derive a positive pecuniary advantage from a public work whenever a neighbor does. It is almost universally held that in arriving at the amount of damage to property not taken allowance should be made for peculiar and individual benefits conferred upon it—compensation to the owner in that form is permissible. And we are unable to say that he suffers deprivation of any fundamental right when a State goes one step further and permits consideration of actual benefits—enhancement in market value—flowing directly from a public work, although all in the neighborhood receive like advantages. In such case the owner really loses nothing which he had before; and it may be said with reason, there has been no real injury.

This subject was much discussed in *Bauman* v. *Ross*, 167 U. S. 548, 574, 584. Through Mr. Justice Gray we there said: "The just compensation required by the Constitution to be made to the owner is to be measured by the loss caused to him by the appropriation. He is entitled to receive the value of what he has been deprived of, and no more. To award him less would be unjust to him; to award him more would be unjust to the public. Consequently, when part only of a parcel of land is taken for a highway, the value of that part is not the sole measure of the compensation or damages to be paid to the owner; but the incidental injury or benefit to the part not taken is also to be considered. When the part not taken is left in such shape or condition, as to be in itself of less value than before, the owner is entitled to additional damages on that account. When, on the other hand, the part which he retains is specially and directly increased in value by the public improvement, the damages to the whole parcel by the appropriation of part of it are lessened. . . . The Constitution of the United States contains no express prohibition against considering benefits in estimating the just compensation to be paid for pri-

vate property taken for public use; and, for the reasons and upon the authorities above stated, no such prohibition can be implied; and it is therefore within the authority of Congress, in the exercise of the right of eminent domain, to direct that, when part of a parcel of land is appropriated to the public use for a highway in the District of Columbia, the tribunal vested by law with the duty of assessing the compensation or damages due to the owner, whether for the value of the part taken, or for any injury to the rest, shall take into consideration, by way of lessening the whole or either part of the sum due him, any special and direct benefits, capable of present estimate and reasonable computation, caused by the establishment of the highway to the part not taken." See *Martin* v. *District of Columbia*, 205 U. S. 135.

The judgment below is

*Affirmed.*