DEPARTMENT OF TRANSPORTATION v. JOE C. ROWE AND WIFE, SHARON B. ROWE; HOWARD L. PRUITT, JR. AND WIFE, GEORGIA PRUITT; ROBERT W. ADAMS, TRUSTEE; ALINE D. BOWMAN; FRANCES BOWMAN BOLLINGER; LOIS BOWMAN MOOSE; DOROTHY BOWMAN ABERNETHY AND HUSBAND, KENNETH H. ABERNETHY; MARTHA BOWMAN CAUDILL AND HUSBAND, JACK CAUDILL; APPALACHIAN OUTDOOR ADVERTISING CO., INC. (FORMERLY APPALACHIAN POSTER ADVERTISING COMPANY, INC.), LESSEE; AND FLORENCE BOWMAN BOLICK

No. 506A98-2

(Filed 20 July 2001)

**1. Appeal and Error— preservation of issues—violation of Law of the Land Clause—not argued at trial—no assignment of error—no Court of Appeals argument**

The Court of Appeals erred by considering whether N.C.G.S. § 136-112(1) violates the Law of the Land Clause in the North Carolina Constitution in an action arising from the taking of a part of defendants' land where defendants did not argue to the trial court that the Law of the Land Clause was an independent reason to strike down the statute, did not assign error on those grounds in the Court of Appeals, and did not make that argument before the Court of Appeals.

**2. Eminent Domain— condemnation of part of tract for highway—measure of damages—equal protection—strict scrutiny**

The statute which concerns the measure of damages for condemnation of a part of a tract for a highway, N.C.G.S. § 136-112(1), neither infringes defendants' right to just compensation nor classifies persons on the basis of a suspect characteristic and does not trigger strict scrutiny under the Equal Protection Clauses of the North Carolina or United States Constitution. Although defendant contends that the statute infringes upon the fundamental right to just compensation by allowing consideration of general benefits on the market value of the remaining land, allowing the jury to consider those benefits is in accord with persuasive federal precedent, the consistent practice of the North Carolina Supreme Court, and the purposes underlying the requirement of just compensation.

**3. Eminent Domain— condemnation of part of tract for highway—measure of damages—Law of the Land Clause—general benefit to remaining property**

The Law of the Land Clause of the North Carolina Constitution requires only that a condemnee be indemnified and permits a factfinder to consider "general benefits" accruing to a condemnee's remaining property; a benefit is no less real when shared by a condemnee's neighbor.

**4. Eminent Domain— condemnation of part of tract for highway—measure of damages—equal protection—rational basis**

The statute which concerns the measure of damages for condemnation of a part of a tract, N.C.G.S. § 136-112(1), does not violate the Equal Protection Clause of the United States or the North Carolina Constitution on a rational-basis review even though N.C.G.S. § 40A-64(b) provides property owners in other cases a choice of compensation measures which is not available under N.C.G.S. § 136-112(1). The General Assembly could have rationally believed that condemnors under Chapter 40A should pay damages using either of the two measures in N.C.G.S. § 40A-64 because public and private condemnors can offset some of their costs through user fees; furthermore, Chapter 40A governs a huge range of use types, condemning authorities, and circumstances, a drastically different situation from the uniform practice of DOT.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 138 N.C. App. 329, 531 S.E.2d 836 (2000), on remand from this Court, 351 N.C. 172, 521 S.E.2d 707 (1999), finding error in orders entered 8 May 1997 and 16 May 1997 by Baker, J., and in a judgment entered 17 June 1997 by Hyatt, J., in Superior Court, Catawba County, and ordering a new trial. Heard in the Supreme Court 12 February 2001.

*Roy A. Cooper, Attorney General, by J. Bruce McKinney, Assistant Attorney General, and T. Lane Mallonee and W. Richard Moore, Special Deputy Attorneys General, for plaintiff-appellant.*

*Lewis & Daggett, Attorneys at Law, P.A., by Michael J. Lewis; and Bell, Davis & Pitt, P.A., by Stephen M. Russell, for defendant-appellees.*

**DEPARTMENT OF TRANSP. v. ROWE**

[353 N.C. 671 (2001)]

ORR, Justice.

This dispute arose from the North Carolina Department of Transportation's ("DOT") decision to build a road connecting U.S. Highway 70-321 to an interchange on Interstate 40 in Catawba County. To acquire land for this project, the DOT exercised its authority under N.C.G.S. § 136-18 to condemn 11.411 acres of defendants' 18.123-acre tract. As required by statute, the DOT acquired defendants' property by filing a declaration of taking and asking for a determination of just compensation. At trial, the presiding judge instructed the jury as to the requirements of N.C.G.S. § 136-112(1), which provides that just compensation is

> the difference between the fair market value of the entire tract immediately prior to said taking and the fair market value of the remainder immediately after said taking with consideration being given to any special or general benefits resulting from the utilization of the part taken for highway purposes.

N.C.G.S. § 136-112(1) (1999). The jury rendered a verdict that defendants were not entitled to any financial compensation for the taking. The verdict reflected that the jury agreed with DOT's argument that the "general benefits" to defendants' remaining property from the project exceeded the cost of the loss of acreage. The trial court entered judgment consistent with this verdict, and the defendants appealed.

After reviewing the errors alleged by defendants, the Court of Appeals, *inter alia*, ordered a new trial on two grounds. First, the Court of Appeals held that N.C.G.S. § 136-112(1) violated the Law of the Land Clause of the North Carolina Constitution. *Department of Transp. v. Rowe*, 138 N.C. App. 329, 342-43, 531 S.E.2d 836, 845 (2000). The Court of Appeals stated that "by allowing general benefits to [set off] the fair market value of the remaining land, the statute allows a compensation which is unjust to the condemnee." *Id.* at 342, 531 S.E.2d at 845. Second, the Court of Appeals held that the statute denied defendants equal protection of the law under the North Carolina Constitution. The Court of Appeals decision was based upon the different standards for compensation for condemnees set out in two different statutes. Defendants' compensation was determined under N.C.G.S. § 136-112(1) because the DOT condemned the property. However, owners of property condemned under N.C.G.S. § 40A would be entitled to compensation under N.C.G.S. § 40A-64(b), which provides for a compensation system more favorable to condemnees

than the system provided for in N.C.G.S. § 136-112(1). The Court of Appeals reasoned that "[b]ecause there is no compelling governmental interest to support [the classes created by N.C.G.S. § 136-112(1) and N.C.G.S. § 40A-64(b)] . . . a property owner's equal protection rights are violated by allowing such a classification." *Id.* at 344, 531 S.E.2d at 846.

Judge Horton dissented on two grounds. He first contended that the Court of Appeals lacked jurisdiction to consider whether this statute violates the Law of the Land Clause of the North Carolina Constitution because defendants neither assigned error on those grounds nor argued that claim before the trial court. He also dissented on the grounds that N.C.G.S. § 136-112(1) does not violate North Carolina's Equal Protection Clause. We agree with Judge Horton on both grounds.

I.

**[1]** We first conclude that the Court of Appeals erred because the question of whether this statute violates the Law of the Land Clause was not properly presented. As Judge Horton pointed out, Rule 10(c) of the North Carolina Rules of Appellate Procedure requires that an appellant state the legal basis for all assignments of error. N.C. R. App. P. 10(c). We have also held that arguments not made before the trial court are not properly before the Court of Appeals. *State v. King*, 342 N.C. 357, 364, 464 S.E.2d 288, 293 (1995). Here, defendants in their appeal to the Court of Appeals failed to assign error on the grounds that N.C.G.S. § 136-112(1) violates the Law of the Land Clause. Also, defendants did not argue to the trial court that the Law of the Land Clause was an independent reason to strike down the statute. Likewise, they did not even make this argument before the Court of Appeals. Even though defendants argued and assigned error to the effect that N.C.G.S. § 136-112(1) denied defendants equal protection under the law, they never raised the issue of a due process violation under our state Constitution's Law of the Land Clause. Thus, the Court of Appeals erred in considering the constitutionality of the statute on those grounds, and we disavow their reasoning and reverse their holding.

II.

We also agree with Judge Horton that N.C.G.S. § 136-112(1) does not deprive defendants the equal protection of the law, although we agree on different grounds from those stated in the dissent. Thus, for the reasons stated below, we reverse the Court of Appeals' holding

**DEPARTMENT OF TRANSP. v. ROWE**

[353 N.C. 671 (2001)]

that N.C.G.S. § 136-112(1) violates the Equal Protection Clause of the North Carolina Constitution. We also hold that it comports with the United States Constitution.

The Equal Protection Clause of Article I, Section 19 of the North Carolina Constitution and the Equal Protection Clause of Section 1 of the Fourteenth Amendment to the United States Constitution forbid North Carolina from denying any person the equal protection of the laws. N.C. Const. art. I, § 19 ("No person shall be denied the equal protection of the laws."); U.S. Const. amend. XIV, § 1 ("No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."). To determine if a regulation violates either of these clauses, North Carolina courts apply the same test. *Duggins v. N.C. State Bd. of Certified Pub. Accountant Exam'rs*, 294 N.C. 120, 131, 240 S.E.2d 406, 413 (1978). The court must first determine which of several tiers of scrutiny should be utilized. Then it must determine whether the regulation meets the relevant standard of review. Strict scrutiny applies when a regulation classifies persons on the basis of certain designated suspect characteristics or when it infringes on the ability of some persons to exercise a fundamental right. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 16-17, 36 L. Ed. 2d 16, 33 (1973); *Texfi Indus., Inc. v. City of Fayetteville*, 301 N.C. 1, 11, 269 S.E.2d 142, 149 (1980). If a regulation receives strict scrutiny, then the state must prove that the classification is necessary to advance a compelling government interest; otherwise, the statute is invalid. *San Antonio*, 411 U.S. at 16-17, 36 L. Ed. 2d at 33; *Texfi*, 301 N.C. at 11, 269 S.E.2d at 149. Other classifications, including gender and illegitimacy, trigger intermediate scrutiny, which requires the state to prove that the regulation is substantially related to an important government interest. *Clark v. Jeter*, 486 U.S. 456, 100 L. Ed. 2d 465 (1988); *Craig v. Boren*, 429 U.S. 190, 50 L. Ed. 2d 397 (1976). If a regulation draws any other classification, it receives only rational-basis scrutiny, and the party challenging the regulation must show that it bears no rational relationship to any legitimate government interest. If the party cannot so prove, the regulation is valid. *Nordlinger v. Hahn*, 505 U.S. 1, 10, 120 L. Ed. 2d 1, 12 (1992); *Texfi*, 301 N.C. at 11, 269 S.E.2d at 149.

In concluding that defendants were denied equal protection under N.C.G.S. § 136-112(1), the Court of Appeals applied strict scrutiny. *Rowe*, 138 N.C. App. at 344, 531 S.E.2d at 846. We conclude that it was error to do so. In fact, as explained below, N.C.G.S. § 136-112(1) does not trigger strict scrutiny because it

neither classifies on the basis of a suspect classification nor infringes upon a fundamental right. Furthermore, N.C.G.S. § 136-112(1) satisfies rational-basis scrutiny because there are rational reasons for DOT and other condemnors to use different systems to calculate just compensation.

A.

[2] We begin our analysis by explaining why N.C.G.S. § 136-112(1) receives only rational-basis scrutiny. Strict scrutiny applies only when a regulation classifies persons on the basis of certain suspect characteristics or infringes the ability of some persons to exercise a fundamental right. *San Antonio*, 411 U.S. at 16-17, 36 L. Ed. 2d at 33; *Texfi*, 301 N.C. at 11, 269 S.E.2d at 149. Not even defendants contend that they are part of a suspect class deserving the extraordinary protection provided by strict scrutiny. They do, however, contend that N.C.G.S. § 136-112(1) infringes upon a fundamental right: the right to just compensation.

Defendants argue that the Court of Appeals correctly concluded that N.C.G.S. § 136-112(1) infringes upon a fundamental right. They claim that the statute violates their right to just compensation. We disagree. Just compensation is clearly a fundamental right under both the United States and North Carolina Constitution. It is specifically enumerated in the Fifth Amendment to the United States Constitution and has been applied to the states through the 14th. *Chicago, Burlington & Quincy R.R. Co. v. City of Chicago*, 166 U.S. 226, 239, 41 L. Ed. 979, 985 (1897). The right to just compensation is not expressly mentioned in the North Carolina Constitution, but "this Court has inferred such a provision as a fundamental right integral to the 'law of the land' clause." *Finch v. City of Durham*, 325 N.C. 352, 363, 384 S.E.2d 8, 14 (1989); *see also Eller v. Board of Educ. of Buncombe County*, 242 N.C. 584, 586, 89 S.E.2d 144, 146 (1955) ("When private property is taken for public use, just compensation must be paid . . . . While this principle is not stated in express terms in the North Carolina Constitution, it is regarded as an integral part of the 'law of the land' . . . .").

Since a fundamental right is involved, we must determine if that right is infringed upon by application of N.C.G.S. § 136-112(1). If defendants' right to just compensation is impacted by the statute, then that impact would warrant a review under the strict-scrutiny standard. If there is no infringement, then the rational-basis standard would apply.

**DEPARTMENT OF TRANSP. v. ROWE**

[353 N.C. 671 (2001)]

The Court of Appeals held that defendants did not receive just compensation because the statute allows the jury to consider "general benefits" when it calculates just compensation for a partial taking. "General benefits" are defined as increases in the value of land "which arise from the fulfillment of the public object which justified the taking [and] which result from the enjoyment of the facilities provided by the new public work and from the increased general prosperity resulting from such enjoyment." *Kirkman v. State Highway Comm'n*, 257 N.C. 428, 434, 126 S.E.2d 107, 112 (1962) (citations omitted); *see also* 3 Julius L. Sackman, *Nichols on Eminent Domain* § 8A.02[4][a] (rev. 3d ed. 2000). Examples include the rise in property value due to increased traffic flow, an aesthetic upgrading of a neighborhood, or more convenient parking. 3 *Nichols on Eminent Domain* § 8A.02[4][a]. In contrast, "special benefits" are increases in the value of land "which arise from the peculiar relation of the land in question to the public improvement." *Kirkman*, 257 N.C. at 433, 126 S.E.2d at 112; *see also* 3 *Nichols on Eminent Domain* § 8A.02[4][b]. An example is the rise in property value due to newly acquired frontage on a public street. 3 *Nichols on Eminent Domain* § 8A.02[4][b].

Both of these types of benefits may be considered by the jury when calculating just compensation under N.C.G.S. § 136-112(1). That statute provides that when, as here, only part of a tract is condemned for the construction of a highway, just compensation for the condemnation is

> the difference between the fair market value of the entire tract immediately prior to said taking and the fair market value of the remainder immediately after said taking with consideration given to any special or general benefits resulting from the utilization of the part taken for highway purposes.

N.C.G.S. § 136-112(1). Because this statute allows a jury to consider "general benefits," the Court of Appeals held that it "allows a compensation which is unjust to the condemnee." *Rowe*, 138 N.C. App. at 342, 531 S.E.2d at 845.

We disagree. The Fifth Amendment to the United States Constitution clearly allows Congress to empower the fact-finder to consider "general benefits." *McCoy v. Union Elevated R.R. Co.*, 247 U.S. 354, 366, 62 L. Ed. 1156, 1164 (1918). We are also convinced that the Law of the Land Clause of the North Carolina Constitution allows a jury to consider "general benefits" when it calculates just compen-

sation. Allowing the jury to consider how "general benefits" affect the market value of the condemnee's remaining land is in accord with persuasive federal precedent, with the consistent practice of this Court, and with the purposes underlying the requirement of just compensation.

It is clear that the Fourteenth Amendment to the United States Constitution allows states to empower fact-finders to consider "general benefits" when calculating just compensation. The United States Supreme Court stated in *McCoy v. Union Elevated R.R. Co.* that

> we are unable to say that [a property owner] suffers deprivation of any fundamental right when a state . . . permits consideration of the actual benefits—enhancement in market value—flowing directly from a public work, although all in the neighborhood receive like advantages.

*Id.* at 366, 62 L. Ed. at 1166. This holding, however, was based on the Fourteenth Amendment to the United States Constitution, *id.* at 363, 62 L. Ed. at 1165, and although "[d]ecisions by the federal courts as to the construction and effect of the due process clause of the United States Constitution . . . do not control an interpretation by this Court of the law of the land clause of our state Constitution[, they] are . . . persuasive [authority]," *McNeill v. Harnett County*, 327 N.C. 552, 563, 398 S.E.2d 475, 481 (1990) (citations omitted). Even though this interpretation is only persuasive authority, we believe it correctly explains the requirements of just compensation.

This interpretation of just compensation accords with the long practice of our state. Although this Court has never specifically addressed the constitutionality of allowing the fact-finder to consider "general benefits," allowing fact-finders to do so has been the practice of this Court since at least 1893. *See, e.g., Robinson v. State Highway Comm'n*, 249 N.C. 120, 105 S.E.2d 287 (1958); *Proctor v. State Highway & Public Works Comm'n*, 230 N.C. 687, 55 S.E.2d 479 (1949); *Wade v. State Highway Comm'n*, 188 N.C. 210, 124 S.E. 193 (1924); *Miller v. City of Asheville*, 112 N.C. 759, 16 S.E. 762 (1893); *see also Department of Transp. v. Mahaffey*, 137 N.C. App. 511, 528 S.E.2d 381 (2000). In 1893 in *Miller v. City of Asheville*, this Court addressed a jury instruction issue arising out of the legislative change applying "special benefits" and "general benefits" in condemnation proceedings. While no constitutional issues were raised, Justice Clark stated for the Court:

DEPARTMENT OF TRANSP. v. ROWE

[353 N.C. 671 (2001)]

Whether the [condemning authority] can reduce damages by all the benefits accruing the [condemnee], rests with the sovereign when it confers the exercise of the right of eminent domain. . . . [Thus] the present act, which extends the assessment of benefits to all received by the landowner, instead of a restriction to the special benefits, is valid. All the landowner can claim is that his property shall not be taken for public use without compensation. Compensation is had when the balance is struck between the damages and benefits conferred on him by the act complained of. To that, and to that alone, he has a constitutional and vested right.

112 N.C. at 768, 16 S.E. at 764. This Court has also stated:

It is firmly established in this State that "Where only a part of a tract of land is appropriated by the State Highway and Public Works Commission for highway purposes, the measure of damages in such proceeding is the difference between the fair market value of the entire tract immediately before the taking and the fair market value of what is left immediately after the taking. . . ." Proctor v. State Highway and Public Works Commission, 230 N.C. 687, 691, 55 S.E.2d 479, 482. This rule has been approved many times . . . .

*Kirkman*, 257 N.C. at 432-33, 126 S.E.2d at 111.

Allowing the fact-finder to consider "general benefits" follows not only persuasive authority and long practice, it also fulfills the purpose underlying the requirement of just compensation: to ensure that persons being required to provide land for public projects are put in the same financial position as prior to the taking. *Accord United States v. 50 Acres of Land*, 469 U.S. 24, 30, 83 L. Ed. 2d 376, 383 (1984) (referring to "the basic principles of indemnity embodied in the Just Compensation Clause"); *cf. State Highway Comm'n v. Phillips*, 267 N.C. 369, 374, 148 S.E.2d 282, 286 (1966) ("In condemnation proceedings our decisions are to the effect that damages are to be awarded to compensate for loss sustained by the landowner."). As the United State Supreme Court has stated, a condemnee "is entitled to be put in as good a position pecuniarily as if his property has not been taken. He must be made whole but is not entitled to more." *Olson v. United States*, 292 U.S. 246, 255, 78 L. Ed. 1236, 1244 (1934).

Here, the argument of defendants, which was accepted by the Court of Appeals, would result in defendants being fully compensated

for the land lost *and* being additionally compensated for "general benefits" accruing to their remainder and to the surrounding property owners. While defendants may deem the denial of such a result unfair, it in no way denies them just compensation. As noted by Justice Clark in *Miller*, the legislature has decided that the state can reduce damages by all of the benefits accruing and that decision rests with the legislature in conferring the right of eminent domain. *Miller*, 112 N.C. at 768, 16 S.E. at 764. Just compensation is had when the balance is struck between the damages and benefits conferred. "To that, and to that alone, [defendants have] a constitutional and vested right." *Id.* If defendants are dissatisfied with that result, then their recourse is with the legislature.

[3] Furthermore, because the Law of the Land Clause requires only that a condemnee be indemnified, it permits a fact-finder to consider "general benefits" accruing to a condemnee's remaining property. For the purposes of just compensation, damages are measured by the change in the fair market value of the land. *See* 26 Am. Jur. 2d *Eminent Domain* § 298 (1996); *accord Olson*, 292 U.S. at 257, 78 L. Ed. at 1244. A condemnee is thus indemnified if she receives the difference between the fair market value of her property before the condemnation and the fair market value of her remainder after the condemnation. That change in market value is clearly affected by "general benefits" accruing to her remaining property; a benefit is no less real simply because it is shared by a condemnee's neighbor. Therefore, because the Law of the Land Clause requires only that the state indemnify the condemnee, because a condemnee's loss is measured by the change in the market value of her property and because that market value is affected by "general benefits," the Law of the Land Clause allows a fact-finder to consider "general benefits" when calculating just compensation. It follows that N.C.G.S. § 136-112(1) satisfies that clause. Because N.C.G.S. § 136-112(1) neither infringes defendants' right to just compensation nor classifies persons on the basis of a suspect characteristic, it does not trigger strict scrutiny under the Equal Protection Clauses of the North Carolina or United States Constitution. Instead, that statute receives only rational-basis scrutiny.

B.

[4] Defendants contend that N.C.G.S. § 136-112(1) fails rational-basis scrutiny. We disagree. Rational-basis scrutiny requires only that the classification made by the statute be rationally related to a legitimate

government objective. *Nordlinger*, 505 U.S. at 10, 120 L. Ed. 2d at 12 ("[U]nless a classification warrants some form of heightened review . . . , the Equal Protection Clause requires only that the classification rationally further a legitimate state interest."); *Texfi*, 301 N.C. at 149, 269 S.E.2d at 149 ("[T]he lower tier of equal protection analysis . . . merely requires that distinctions which are drawn by a challenged statute or action bear some rational relationship to a conceivable legitimate government interest."). It gives wide latitude to the legislature; if there is any plausible policy reason for the classification, the test is satisfied. *Nordlinger*, 505 U.S. at 11, 120 L. Ed. 2d at 13 ("In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification . . . ."); *White v. Pate*, 308 N.C. 759, 766, 304 S.E.2d 199, 204 (1983) ("[I]n instances in which it is appropriate to apply the rational basis standard, the governmental act is entitled to a presumption of validity.").

In article 9, "Condemnation," of chapter 36 of the North Carolina General Statutes, the General Assembly has set out the process for the acquisition of property by DOT using the power of eminent domain. Within that article is N.C.G.S. § 136-112, "Measure of Damages." That statute specifically sets out, as previously noted, that just compensation is determined by the fair market value of the property immediately before the taking and immediately after the taking with consideration given to "general benefits" and "special benefits." N.C.G.S. § 136-112(1).

In contrast, article 1 of chapter 40A of the North Carolina General Statutes provides that "[i]t is the intent of the General Assembly that the procedures provided by this Chapter shall be the exclusive condemnation procedures to be used in this State by all private condemnors and all local public condemnors." N.C.G.S. § 40A-1 (1999). The statute further provides for the repeal of all other provisions in laws, charters, or local acts authorizing different procedures. *Id.* It is obvious that in 1981 the General Assembly chose to consolidate and make uniform a myriad of laws pertaining to the exercise of eminent domain by public and private condemnors.

Chapter 40A thus sets out both the procedure for calculation of just compensation, N.C.G.S. ch. 40A, art. 3, and the measure of just compensation, N.C.G.S. ch. 40A, art. 4, for landowners affected by the exercise of eminent domain. The statute covers: (a) "Private Condemnors," such as corporations, boards of trustees, and railroads; (b) "Local Public Condemnors," to include both municipalities

and counties; and (c) "Other Public Condemnors," such as hospital authorities, housing authorities, and watershed-improvement districts. Each section also lists with some specificity the types of public uses that these condemnors can undertake through the use of eminent domain.

In determining just compensation for a taking by one of these local or private entities for any of the range of permissible purposes, the General Assembly opted to provide a measure of just compensation for the affected property owners that ensures a choice in a partial taking. N.C.G.S. § 40A-64(b) allows a property owner to choose the greater of the fair market value before and after the property is taken or the fair market value of the property taken. It is this choice available under N.C.G.S. § 40A-64 and not available under N.C.G.S. § 136-112 that defendants contend violates their constitutional rights.

Defendants claim that this classification between condemnees is not rationally related to any legitimate governmental purpose. However, we agree with the DOT: defendants have failed to carry their burden of proving that there is no rational reason for this distinction. As the DOT suggests, the General Assembly could have determined that public and private condemnors can offset some of their costs through user fees for the service installed through the condemnation, services such as water or sewage facilities. Thus, the General Assembly could rationally have believed that public and private condemnors should pay damages using either of the two methods allowed by N.C.G.S. § 40A-64.

Furthermore, it is perfectly reasonable for the General Assembly to have determined that, having given the power of eminent domain across this state to every municipality and county; every housing authority; and every private corporation involved in power generation, railroads, telephones, etc., the best way to ensure that a citizen whose property was taken by eminent domain would receive just compensation was by giving him a choice. The circumstances under N.C.G.S. § 40A govern a huge range of types of uses, condemning authorities, and circumstances that would require just compensation. Such a situation is drastically different from the uniform practice of the DOT, an agency of the state, condemning property all across the state for roads. Either of these justifications is sufficient to withstand rational-basis review. Therefore, this classification does not violate the Equal Protection Clause of the United States or North Carolina Constitution.

N.C.G.S. § 136-112(1) is a valid exercise of the legislative power of the North Carolina General Assembly. It does not violate the Equal Protection Clause of the United States or North Carolina Constitution. We therefore reverse the Court of Appeals as to this issue.

Based upon the foregoing, we reverse the decision of the Court of Appeals.

REVERSED.