Justice THOMAS, concurring.
I join the Court's opinion in full. I write separately to offer an additional observation concerning Justice BREYER's argument that we should remand the case. The Takings Clause prohibits the government from taking private property except "for public use," even when it offers "just compensation." U.S. Const., Amdt. 5. That requirement, as originally understood, imposes a meaningful constraint on the power of the state-"the government may take property only if it actually uses or gives the public a legal right to use the property." Kelo v. New London,545 U.S. 469, 521, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005)(THOMAS, J., dissenting). It is far from clear that the Raisin Administrative Committee's conduct meets that standard. It takes the raisins of citizens and, among other things, gives them away or sells them to exporters, foreign importers, and foreign governments. 7 CFR § 989.67(b) (2015). To the extent that the Committee is not taking the raisins "for public use," having the Court of Appeals calculate "just compensation" in this case would be a fruitless exercise.
Justice BREYER, with whom Justice GINSBURGand Justice KAGANjoin, concurring in part and dissenting in part.
I agree with Parts I and II of the Court's opinion. However, I cannot agree with the Court's rejection, in Part III, of the Government's final argument. The Government contends that we should remand the case for a determination of whether any compensation would have been due if the Hornes had complied with the California Raisin Marketing Order's reserve requirement. In my view, a remand for such a determination is necessary.
The question of just compensation was not presented in the Hornes' petition for certiorari. It was barely touched on in the briefs. And the courts below did not decide it. At the same time, the case law that I have found indicates that the Government may well be right: The marketing order may afford just compensation for the takings of raisins that it imposes. If that is correct, then the reserve requirement does not violate the Takings Clause.
I
The Takings Clause of the Fifth Amendment provides that "private property [shall *2434 not] be taken for public use, without just compensation." The Clause means what it says: It "does not proscribe the taking of property; it proscribes taking without just compensation." Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,473 U.S. 172, 194, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)(emphasis added). Under the Clause, a property owner "is entitled to be put in as good a position pecuniarily as if his property had not been taken," which is to say that "[h]e must be made whole but is not entitled to more." Olson v. United States,292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236 (1934).
On the record before us, the Hornes have not established that the Government, through the raisin reserve program, takes raisins without just compensation. When the Government takes as reserve raisins a percentage of the annual crop, the raisin owners retain the remaining, free-tonnage, raisins. The reserve requirement is intended, at least in part, to enhance the price that free-tonnage raisins will fetch on the open market. See 7 CFR § 989.55 (2015); 7 U.S.C. § 602(1). And any such enhancement matters. This Court's precedents indicate that, when calculating the just compensation that the Fifth Amendment requires, a court should deduct from the value of the taken (reserve) raisins any enhancement caused by the taking to the value of the remaining (free-tonnage) raisins.
More than a century ago, in Bauman v. Ross,167 U.S. 548, 17 S.Ct. 966, 42 L.Ed. 270 (1897), this Court established an exception to the rule that "just compensation normally is to be measured by 'the market value of the property at the time of the taking.' " United States v. 50 Acres of Land,469 U.S. 24, 29, 105 S.Ct. 451, 83 L.Ed.2d 376 (1984)(quoting Olson, supra,at 255, 54 S.Ct. 704). We considered in Baumanhow to calculate just compensation when the Government takes only a portion of a parcel of property:
"[W]hen part only of a parcel of land is taken for a highway, the value of that part is not the sole measure of the compensation or damages to be paid to the owner; but the incidental injury or benefit to the part not taken is also to be considered. When the part not taken is left in such shape or condition, as to be in itself of less value than before, the owner is entitled to additional damages on that account. When, on the other hand, the part which he retains is specially and directly increased in value by the public improvement, the damages to the whole parcel by the appropriation of part of it are lessened." 167 U.S., at 574, 17 S.Ct. 966.
"The Constitution of the United States," the Court stated, "contains no express prohibition against considering benefits in estimating the just compensation to be paid for private property taken for the public use." Id.,at 584, 17 S.Ct. 966.
The Court has consistently applied this method for calculating just compensation: It sets off from the value of the portion that was taken the value of any benefits conferred upon the remaining portion of the property. See Regional Rail Reorganization Act Cases,419 U.S. 102, 151, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974)("[C]onsideration other than cash-for example, any special benefits to a property owner's remaining properties-may be counted in the determination of just compensation" (footnote omitted)); United States v. Miller,317 U.S. 369, 376, 63 S.Ct. 276, 87 L.Ed. 336 (1943)("[I]f the taking has in fact benefitted the remainder, the benefit may be set off against the value of the land taken"); United States v. Sponenbarger,308 U.S. 256, 266-267, 60 S.Ct. 225, 84 L.Ed. 230 (1939)("[I]f governmental activities *2435 inflict slight damage upon land in one respect and actually confer great benefits when measured in the whole, to compensate the landowner further would be to grant him a special bounty. Such activities in substance take nothing from the landowner"); Reichelderfer v. Quinn,287 U.S. 315, 323, 53 S.Ct. 177, 77 L.Ed. 331 (1932)("Just compensation ... was awarded if the benefits resulting from the proximity of the improvement [were] set off against the value of the property taken from the same owners"); Dohany v. Rogers,281 U.S. 362, 367-368, 50 S.Ct. 299, 74 L.Ed. 904 (1930)(a statute that "permits deduction of benefits derived from the construction of a highway" from the compensation paid to landowners "afford[s] no basis for anticipating that ... just compensation will be denied"); Norwood v. Baker,172 U.S. 269, 277, 19 S.Ct. 187, 43 L.Ed. 443 (1898)("Except for [state law], the State could have authorized benefits to be deducted from the actual value of the land taken, without violating the constitutional injunction that compensation be made for private property taken for public use; for the benefits received could be properly regarded as compensation pro tantofor the property appropriated to public use").
The rule applies regardless of whether a taking enhances the value of one property or the value of many properties. That is to say, the Government may "permi[t] consideration of actual benefits-enhancement in market value-flowing directly from a public work, although all in the neighborhood receive like advantages."McCoy v. Union Elevated R. Co.,247 U.S. 354, 366, 38 S.Ct. 504, 62 L.Ed. 1156 (1918). The Federal Constitution does not distinguish between "special" benefits, which specifically affect the property taken, and "general" benefits, which have a broader impact.
Of course, a State may prefer to guarantee a greater payment to property owners, for instance by establishing a standard for compensation that does not account for general benefits (or for any benefits) afforded to a property owner by a taking. See id.,at 365, 38 S.Ct. 504(describing categories of rules applied in different jurisdictions); Schopflocher, Deduction of Benefits in Determining Compensation or Damages in Eminent Domain, 145 A.L.R. 7, 158-294 (1943)(describing particular rules applied in different jurisdictions). Similarly, "Congress ... has the power to authorize compensation greater than the constitutional minimum." 50 Acres of Land, supra,at 30, n. 14, 105 S.Ct. 451 (1984). Thus, Congress, too, may limit the types of benefits to be considered. See, e.g., 33 U.S.C. § 595. But I am unaware of any congressional authorization that would increase beyond the constitutional floor the compensation owed for a taking of the Hornes' raisins.
If we apply Baumanand its progeny to the marketing order's reserve requirement, "the benefit [to the free-tonnage raisins] may be set off against the value of the [reserve raisins] taken." Miller, supra,at 376, 63 S.Ct. 276. The value of the raisins taken might exceed the value of the benefit conferred. In that case, the reserve requirement effects a taking without just compensation, and the Hornes' decision not to comply with the requirement was justified. On the other hand, the benefit might equal or exceed the value of the raisins taken. In that case, the California Raisin Marketing Order does not effect a taking without just compensation. See McCoy, supra,at 366, 38 S.Ct. 504("In such [a] case the owner really loses nothing which he had before; and it may be said with reason, there has been no real injury"); Brown v. Legal Foundation of Wash.,538 U.S. 216, 237, 123 S.Ct. 1406, 155 L.Ed.2d 376 (2003)("[I]f petitioners'
*2436 net loss was zero, the compensation that is due is also zero"). And even the Hornes agree that if the reserve requirement does not effect a taking without just compensation, then they cannot use the Takings Clause to excuse their failure to comply with the marketing order-or to justify their refusal to pay the fine and penalty imposed based on that failure. See Brief for Petitioners 31 ("The constitutionality of the fine rises or falls on the constitutionality of the Marketing Order's reserve requirement and attendant transfer of reserve raisins" (internal quotation marks omitted)).
II
The majority believes the Baumanline of cases most likely does not apply here. It says that those cases do "not create a generally applicable exception to the usual compensation rule, based on asserted regulatory benefits of the sort at issue here." Ante,at 2432. But it is unclear to me what distinguishes this case from those.
It seems unlikely that the majority finds a distinction in the fact that this taking is based on regulatory authority. Cf. Chrysler Corp. v. Brown,441 U.S. 281, 295, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979)("It has been established in a variety of contexts that properly promulgated, substantive agency regulations have the force and effect of law" (internal quotation marks omitted)). It similarly seems unlikely that the majority intends to distinguish between takings of real property and takings of personal property, given its recognition that the Takings Clause "protects 'private property' without any distinction between different types." Ante,at 2426. It is possible that the majority questions the Government's argument because of its breadth-the Government argues that "it would be appropriate to consider what value all of the raisins would have had in the absence of the marketing order," and I am unaware of any precedent that allows a court to account for portions of the marketing order that are entirely separate from the reserve requirement. But neither am I aware of any precedent that would distinguish between how the Baumandoctrine applies to the reserve requirement itself and how it applies to other types of partial takings.
Ultimately, the majority rejects the Government's request for a remand because it believes that the Government "does not suggest that the marketing order affords the Hornes compensation" in the amount of the fine that the Government assessed. Ante,at 2433. In my view, however, the relevant precedent indicates that the Takings Clause requires compensation in an amount equal to the value of the reserve raisins adjusted to account for the benefits received. And the Government does, indeed, suggest that the marketing order affords just compensation. See Brief for Respondent 56 ("It is likely that when all benefits and alleged losses from the marketing order are calculated, [the Hornes] would have a net gainrather than a net loss, given that a central point of the order is to benefit producers"). Further, the Hornes have not demonstrated the contrary. Before granting judgment in favor of the Hornes, a court should address the issue in light of all of the relevant facts and law.
* * *
Given the precedents, the parties should provide full briefing on this question. I would remand the case, permitting the lower courts to consider argument on the question of just compensation.
For these reasons, while joining Parts I and II of the Court's opinion, I respectfully dissent from Part III.